[No. 4772.]
THE GILSON QUARTZ MINING COMPANY v. L. GILSON and E. M. HAMPTON.

Evidence of Minutes of Corporation.—A corporation may introduce parol evidence to show that a resolution of its board of trustees, spread upon the minutes of its proceedings, does not express correctly the proposition which was voted by the board.

Appeal from the District Court, Fifth Judicial District, County of Tuolumne.

This is the second appeal in this case. The case on the first appeal is reported in 47 Cal. 598. The principal facts

are there stated.  On the second trial, after the remittitur went down, the plaintiff called Raymond, one of the trustees of the plaintiff, as a witness.  Raymond testified that Gilson proposed to him to pay the plaintiff two thousand dollars and obtain a purchaser of its quartz ledge and mill for five thousand dollars, if the plaintiff would satisfy its judgment against him, Gilson; that a meeting of the board of trustees of the plaintiff was called, at which Gilson was not present, but which was attended by Rogers, an attorney, at the request of Gilson who told Raymond that he wanted Rogers to go there to see that everything was right; that at the meeting the witness told the board what Gilson's proposition was, and the board then voted to accept of it; that the board then requested Rogers to place the matter in legal shape, and he, Rogers, told the witness to take pen, paper and ink, and write down what he told him; that witness did so, and at Rogers's dictation wrote as follows:

"Meeting of the Board of Trustees of the Gilson Quartz Mining Company, held at Sonora, June 16, 1871; present C. E. Gorham and R. S. Raymond.  On motion, C. E. Gorham was chosen president pro tem.  A proposition having been made to the company, on behalf of L. Gilson and E. M. Hampton, to pay the sum of $2000 in gold coin to the company, and also to cause to be relinquished to the company by D. M. Kenfield all right, title or claim by him of, in, or to any of the capital stock of said company, now or hitherto held or claimed by him, and all dividends which have arisen or may arise therefrom, in consideration of the cancellation of a certain judgment obtained in the District Court of the Fifth Judicial District, County of Tuolumne, State of California, on the 7th day of May, 1868, in the case of the *Gilson Quartz Mining Company* v. *L. Gilson and E. M. Hampton*, for the sum of $7216.04, and costs of suit.  On motion of R. S. Raymond it is ordered that said proposition be, and the same is hereby accepted, and the said R. S. Raymond is hereby authorized, as trustee of the Gilson Quartz Mining Company, on the receipt of the $2000 aforesaid, and the relinquishment by D. M. Kenfield, as aforesaid, to cancel said judgment.

"A proposition having been made on behalf of Jesse Holliday to purchase the Gilson Quartz Mining Company's property for the sum of $5000 in gold coin, it is ordered that the said proposition be, and the same is hereby accepted, and C. E. Gorham and R. S. Raymond, two of the trustees of the said company, are hereby authorized, on behalf of said company, to execute the proper conveyance of said property to said Holliday, on receipt of the sum of money aforesaid.

"R. S. Raymond,
"Secretary Gilson Quartz Mining Company."

The witness was then allowed, against the objection of the defendants, to testify that the resolutions as written were not the resolutions passed by the board. The following is his testimony:

"Q. State what was, as near as you can, the exact language in which the resolution was stated, and which was voted upon at the meeting.

"A. I made a statement to the meeting of Gilson's proposition, that he had offered to pay $2000 in cash, and sell the property of the Gilson Quartz Mining Company for $5000, in consideration of the cancellation of this judgment. It was moved that we accept that proposition, and it was voted upon and passed. At the time Rogers was dictating those resolutions that appear on the book, we both objected to the manner in which he was dictating. He said it didn't make a G—d d—n bit of difference; it was all right anyhow; we were bound to get our money; it didn't make any odds what went on the books.

"Q. Now state what portion of the resolution was objected to, and who objected to it, as appears on your books there.

"A. Well, it didn't say that Gilson was responsible for the sale of the mill and mine here for $5000; that was one thing; both Gorham and myself objected."

The plaintiff recovered judgment, and the defendants appealed.

*E. R. Galvin and W. L. Dudley,* for the Appellant.

Of course the entries made in the corporation books, in relation to this transaction, were not admissible at all *for*

*the plaintiff* had the defendants objected. (Angell & Ames on Corporations, Sec. 679.) But they were introduced by the plaintiff, *without objection* on the part of the defendants; and when once in evidence, the corporation was bound by them, as the best evidence, and could not introduce parol testimony to contradict, explain or enlarge the record they had made and introduced. (*Jackson et al.* v. *Walsh,* 3 John. 226; Angell & Ames on Corporations, Secs. 244, 679 and 83.)

*Caleb Dorsey,* for the Respondent, argued that there was a conspiracy between Gilson, Rogers, Kenfield and Holliday, to fraudulently procure a cancellation of the judgment, and that the alteration of the proceedings of the meeting of the board of trustees was one of the means by which the fraud was to be accomplished.

By the COURT:

Judgment and order affirmed.

Mr. Justice McKINSTRY delivered the following dissenting opinion:

I dissent. The resolution of the board of trustees establishes the contract which Raymond was authorized to make on behalf of the corporation, unless, by reason of fraud practiced by Rogers in collusion with Gilson, the resolution fails to present the action of the board. The minutes were entirely under the control of the trustees, who were actually present and supervised the entry, with full knowledge of its contents; of the particulars in which it differed from the conversation between Gilson and Raymond, as reported by the latter, and with their attention directly called to the legal effect of the variance.

Under these circumstances I think the corporation ought not to be permitted to deny that the resolution expresses the deliberate purpose of the board.