[S. F. No. 1943.  In Bank.—December 27, 1901.]

## J. HOWARD SMITH, Appellant, v. W. H. MARTIN et al., Respondents.

CORPORATIONS—ISSUANCE OF STOCK AT LESS THAN PAR—UNANIMOUS CONSENT—VALIDITY—CONSIDERATION—LABOR AND PROPERTY.—By unanimous concurrence of all the directors and stockholders of a corporation, its shares of stock may be issued as paid up, for less than their par value in money, or in exchange for labor or property. Stock issued in exchange for labor or property is upon lawful consideration, and is neither fictitious nor void as to the public.

ID.—CONVEYANCE OF STREET FRANCHISES TO STREET RAILWAY COMPANY—ISSUANCE OF ENTIRE STOCK TO GRANTORS.—The conveyance of street franchises to a street railway company by subscribers, who took all of its stock in exchange therefor, and who at the time of the issue thereof were its only stockholders and directors, and who had then transferred none of the stock, was upon a valuable consideration, and not invalid.

ID.—MISREPRESENTATIONS OF CORPORATION—IMPROPER ISSUE OF UNPAID SHARES—ESTOPPEL—BONA FIDE PURCHASER NOT DAMAGED.—Since the corporation has power to issue shares of stock upon proper conditions, even if it made misrepresentations, through its directors, that its shares were paid up, when the contrary was the fact, and thereby induced a purchaser to take an improper and illegal issue of unpaid shares of stock, it would be estopped to claim their invalidity; and shares so issued would be good in the hands of a *bona fide* purchaser thereof, who took without knowledge of the facts showing their invalidity; and he cannot be damaged by such misrepresentations.

ID.—STATUTE OF LIMITATIONS—DISCOVERY OF FRAUD—MEANS OF KNOWLEDGE.—Where the complaint for damages arising from the

purchase of stock by the plaintiff, on the grounds of alleged fraud of the defendants, shows a discovery of all the facts necessary to a complete understanding of the alleged fraud two days less than three years prior to the commencement of the action, and the complaint sufficiently shows that the plaintiff had the same means of knowledge a year earlier, and that the circumstances were then such as to put him upon inquiry, and that with reasonable diligence he might then have learned all that he subsequently learned, such means of knowledge must be deemed equivalent to knowledge, and the complaint shows that the cause of action was barred by the statute.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

J. Howard Smith, Appellant, in *pro. per.*

E. F. Preston, for Respondent.

THE COURT.—This action was brought to recover damages alleged to have resulted from the purchase by plaintiff of one hundred shares of stock in the Ferries and Cliff House Railway, a corporation. Plaintiff purchased in the Stock and Bond Exchange of San Francisco, and it is not averred or claimed that either of the defendants were in privity with his purchase, or personally made any representations to him upon the subject. It is charged, however, in the complaint that the defendants were directors of the corporation, and that they "caused and procured it to be falsely represented and set forth in the books of said corporation that all of said shares of unsubscribed-for and unpaid capital stock were fully paid-up shares, and that said unsubscribed-for shares were so designated and set forth on the books of said corporation with the design of deceiving and misleading future purchasers thereof." It was also averred in the complaint that said unsubscribed-for shares were taken by defendants without consideration, and plaintiff contends that they were, and are, invalid. Also, that the defendants caused the said shares to be listed on the Stock and Bond Exchange, and plaintiff was induced by said representations to purchase one hundred shares of such illegal and void issue, and to pay the sum of $3,500 therefor.

All the acts and representations charged and averred to have been done by defendants, were charged to have been done by them as directors of the corporation. As to the issue of said stock, the averment is, "that on January 2, 1888, and on March 5, 1888, said directors being all present, convened as the board of directors of said alleged corporation, and they, the said defendant directors, assuming to act as said board, in violation of law, issued in exchange for certain pretended shares of Powell Street Railway Company, and Park and Cliff House Railway Company, and to defendant Lynch, as representing certain persons other than said defendants (who held and owned eight hundred and sixty shares of so-called capital stock of Powell Street Railway Company), all of the unsubscribed-for and unpaid-for shares of capital stock of said Ferries and Cliff House Railway Company,—to wit, 24,750 shares thereof."

There is also an averment that the defendants conveyed to the corporation certain street franchises, and the corporation operated its railroad under such franchises.

Judgment was entered upon demurrer. One of the grounds of the demurrer was want of facts, and under this it is contended that the complaint shows that there was a consideration for the issue of the stock, and, at all events, the certificates of stock are valid in the hands of plaintiff, who avers that he purchased in good faith and without notice of any of the alleged facts which plaintiff contends rendered the issue void.

It is also charged that the complaint is insufficient, because it does not show that plaintiff is still the owner of the shares of stock. For aught that appears, he may have sold his stock for more than it cost him. It does not appear that he has ever been denied the rights of a stockholder by the corporation. In fact, the validity of the stock has never been called in question by any one except the plaintiff, and by him only in this action.

It further appears from the complaint that at the time of the alleged illegal issue the defendants, who took all the stock as paid-up stock, were the only stockholders. It is alleged that the defendants duly subscribed for two hundred and fifty shares (fifty shares each), and that "no other shares of said corporation, except said aggregate subscription of 250 shares of said stock, of the par value of $25,000, were ever subscribed

for or paid for by any person, association, or corporation."
There is no averment to the effect that the defendants had
transferred any of this stock, and therefore we must presume
against the pleader that they had not. There was, then, a
valuable consideration paid for the stock, and it was issued
with the consent of all the directors and all the stockholders of
the corporation.

In *Smith* v. *Ferries and Cliff House Railway Co.* (Cal. Dec.
1897), 51 Pac. Rep. 710, the question as to the validity of this
stock issue was raised. As the case went off on an equal
division of the qualified members of the court, the case can
hardly be regarded as a precedent. But the matter was well
considered by the six members of the court who participated.
The facts upon which this question depends were the same in
that case as here. In the opinion written by Justice Garoutte,
it was held that the shares, having been issued for a valuable
consideration, with consent of all the stockholders, were sub-
scribed capital stock. It was said in the other opinion, written
by the chief justice, the argument in which we adopt, as
follows: "Conceding that the directors have no power to issue
them [shares of stock], except at par, and upon payment of
the same amount that has been called on previously issued
shares, it cannot be denied that, by unanimous concurrence of
all the directors and all the stockholders, they may be issued
for less than their value in money or in exchange for property;
for who in such case could complain? The strictest limitation
that is to be found upon the power to issue their shares is con-
tained in section 11 of article XII of the constitution, which
provides that 'no corporation shall issue stock or bonds, except
for money paid, labor done, or property actually received,
and all fictitious increase of stock or indebtedness shall be
void.' Hereby the clearest implication is permission given by
the state to issue stock in exchange for labor or property, and
stock so issued is neither fictitious nor void as to the public.
. . . Stock issued in exchange for property is therefore not
void, or even voidable, when it has been issued by unanimous
concurrence of all the directors and all the existing stock-
holders of a corporation. . . . The transaction was the simple
and ordinary one of incorporating a business of any sort, com-
mercial, mining, or manufacturing, where the partners or
co-owners put their mine or factory or stock in trade into a cor-

poration and receive stock of the corporation in exchange. To attempt to invalidate such a transaction upon the ground that the directors in issuing the stock to themselves violate their duty as trustees of the stockholders is absurd. They are themselves the stockholders, beneficiaries, and trustees at the same time, and there can be no conflict of interest between them.''

And even if this proposition be untenable, the stock is undoubtedly good in the hands of plaintiff, who purchased without knowledge of the facts which, he contends, show that the stock issue was unauthorized. The corporation issued the stock.. It had the power to issue it upon proper conditions. The corporation made all the representations which induced plaintiff to purchase, including the listing upon the Stock and Bond Exchange. Under such circumstances, admitting the issue was illegal, the corporation is estopped to claim its invalidity. (*New York etc. R. R. Co.* v. *Schuyler,* 34 N. Y. 30; Beach on Corporations, sec. 487; Morawetz on Corporations, sec. 761; *Tome* v. *Parkersburg R. R. Co.,* 39 Md. 86.[1])

The plaintiff, therefore, fails to show that he has suffered damage through the action of defendants.

There is no averment of damage, save through the invalidity of the stock issue. Supposing the stock to be valid, there is no sufficient statement of injury through the representation that the shares were fully paid up, conceding that such representation was made.

Another ground of the demurrer to the complaint was the statute of limitations, subdivision 4 of section 338 of the Code of Civil Procedure providing that an action for relief on the ground of fraud or mistake must be commenced within three years. · ''The cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake.''

The fraud complained of consisted, as alleged, in the defendants, while acting as the board of directors of said corporation, issuing to themselves, in exchange for certain pretended shares of Powell Street Railway Company and Park and Cliff House Railway Company, all of the unsubscribed-for and unpaid-for shares of capital stock of said Ferries and Cliff House Railway Company,—to wit, 24,750 shares thereof; that they then caused it to be falsely represented and set forth

[1] 17 Am. Rep. 540.

in the books of said corporation that all of said shares of unsubscribed and unpaid-for stock were fully paid-up shares; and thereafter, in January, 1891, by reason of said representations, plaintiff was induced to, and did, purchase one hundred shares of said stock, paying therefor $3,500. That thereafter, and on the twelfth day of September, 1891, he paid to the treasurer of said corporation an assessment of $1,000 on said one hundred shares of stock. Said issue of stock to defendants is alleged to be without consideration, illegal, and void. The damages claimed by plaintiff are the aggregate amounts so paid as the purchase price and on the said assessment. This suit was not brought until April 20, 1896, upwards of five years after plaintiff had parted with his money as aforesaid; and, therefore, to avoid the statute of limitations, it became necessary to show a discovery of the alleged fraud within three years preceding the commencement of the action. To this end, plaintiff, among other things, alleges that he purchased the stock in good faith, and was wholly ignorant of the fraudulent devices of defendants, and had no reason to suspect or suppose that said certificates of stock were not genuine. "That the defendants circulated reports that the company was doing a large and profitable business, which came to the knowledge of plaintiff, and, as plaintiff is informed and believes, and thereupon avers, caused it to be publicly printed and published, and represented to plaintiff that dividends to stockholders would soon be regularly paid, and plaintiff was thereby lulled into a state of false security, as he did not expect dividends too soon, owing to the fact that the road had only been a short time constructed through a sparsely settled portion of the city and county of San Francisco, and had a large prospective value. That said misrepresentations as to earnings, dividends, and value of stock were also made by his neighbor, John Ballard, one of the defendants herein, to the son of plaintiff, William Dunbar Jewett, while plaintiff was absent in the state of Montana, for the purpose of transmission, and the same were thereupon conveyed, to the plaintiff for the purpose of misleading him. . . .

"That plaintiff became suspicious, owing to the frequent postponement of the dates fixed by the defendants when dividends would be announced, and the long delay in the payment thereof, which has continued even to this present hour, and

thereupon demanded an inspection of the books and records of said corporation, in order to ascertain the condition of its affairs. That plaintiff then learned that the board of directors of said corporation had instructed the secretary thereof to communicate by letter to its attorneys that they had decided not to employ their services longer, and later had referred it to the defendant Adams to state that it was the sense of the board of directors to dispense with their services. That thereafter said defendants as said board of directors refused to grant a full inspection, or allow more than a mere perfunctory examination of the business affairs of said corporation, or give the information necessary to a complete understanding of its affairs, down to the twenty-second day of April, 1893, when this honorable court, in another action, made an order that an examination be had of all the books, papers, and records of said corporation, and those of certain other corporations ancillary to said Ferries and Cliff House Railway Company, which order was contested by said defendants.

"That pursuant to the order aforesaid and in obedience to a subpœna, and in accordance with the stipulation of the parties, the books, records, and papers of said corporation, and the books, records, papers, and vouchers of Powell Street Railway Company, Park and Cliff House Railway Company, Bay Shore and South San Francisco Railway Company, and the private account-books of, and certain vouchers and papers belonging to, defendants W. H. Martin and John Ballard were produced, and were subjected to a close and careful examination, which was found to be necessary owing to the involved, confused, and mixed-up character of the business and relations of the companies aforesaid and the affairs of defendants, and thereby plaintiff for the first time discovered the method by which the defendants had constructed and equipped the railroad system owned and operated by Ferries and Cliff House Railway Company, and had illegally issued to themselves 24,750 shares of its unsubscribed-for stock without rendering any consideration whatever to said corporation therefor. . . .

"That only within three years from the time of the filing of the original complaint herein did he discover the fraudulent character of said acts and practices perpetrated upon him, and at no time prior thereto did he acquire full and positive

information in regard to the falsity of said representations, and not until on or about June 6, 1893, did plaintiff have cause to suppose or believe such to be the facts, and then learned for the first time, from testimony then given by defendant Martin in another action, that the defendants herein, while in the control of and managing said corporations, and each of them, and as the board of directors of Ferries and Cliff House Railway Company, 'preferred to issue, and had issued, bonds, instead of subscribing for and assessing the stock of said corporations,' and each of them, and that said defendants simply took the unsubscribed-for and unpaid-for stock of Ferries and Cliff House Railway Company and divided said shares of unsubscribed-for and unpaid-for capital stock of said corporation between themselves without rendering any consideration whatever to said corporation therefor."

It appears from the foregoing allegations that plaintiff did obtain information necessary to a "complete understanding" of the affairs of said corporation on April 22, 1893, lacking two days of three years before the commencement of this action. It also appears that prior to that date plaintiff became "suspicious" and demanded an inspection of the books, which seems to have been granted, but not to the full extent desired. Whether these suspicions were aroused, and the "perfunctory examination of the business affairs of said corporation," under the permission of its board of directors, were had more than three or more than five years before the commencement of this action, does not appear. But we think it does sufficiently appear from the complaint that the exercise of reasonable diligence on the part of plaintiff, when his suspicions were first aroused, would have then disclosed to him all that he subsequently learned; and that his excuse for not sooner obtaining the knowledge of the alleged fraudulent acts of defendants is not a valid one. In actions based on fraud, either at law or in equity, "for the purposes of the statute of limitations, if the means of knowledge exist, and the circumstances are such as to put a man of ordinary prudence on inquiry, it will be held that there was knowledge of what could have been readily ascertained by such inquiry." (*Moore* v. *Boyd*, 74 Cal. 167; *Bills* v. *Silver King Mining Co.*, 106 Cal. 9; *Robertson* v. *Burrell*, 110 Cal. 568; *Lady Washington C. Co.* v. *Wood*, 113 Cal. 482; *Lee* v. *McClelland*, 120 Cal. 147; *Archer* v.

*Freeman,* 124 Cal. 528; *Marks* v. *Evans* (Cal., Aug. 2, 1900), 62 Pac. Rep. 76; *Wood* v. *Carpenter,* 101 U. S. 135.) Plaintiff could have learned in 1892 all that he did learn in 1893, by the exercise of proper diligence.

The complaint shows that the cause of action is barred by the statute.

The judgment is affirmed.

TEMPLE, J., concurring.—I concur in the judgment on the first ground discussed in the opinion.

BEATTY, C. J., concurring.—If the plaintiff has alleged facts constituting a cause of action against the defendants, I do not think his action is barred by the statute of limitations; that is to say, if he has pleaded an actionable fraud, I think he has alleged facts sufficient to excuse his failure to discover the fraud three years prior to the filing of his complaint.

But has he shown that he ever had a right of action? His whole argument on this point is based upon the assumption that the certificate of stock issued to him for the one hundred shares mentioned in his complaint was void, and did not constitute him a stockholder of the corporation. This position is utterly unsupported, as is fully shown in the opinion of the court; and the only question is whether plaintiff has stated a cause of action independently of this unfounded assumption. He alleges that the defendants issued to themselves 24,750 shares of the stock of the corporation, out of a total of 25,000 shares, without paying any money therefor, and without the transfer of property of any pecuniary value; that is to say, he alleges that the only property transferred by the defendants to the corporation, in exchange for the stock so issued to themselves, was incumbered by debts exceeding in amount the value of the property, which debts the corporation was made to assume. He alleges that, notwithstanding the corporation got nothing for the stock, it was issued as fully paid stock, and so entered in the books of the corporation. He alleges that the defendants caused said stock to be listed on the exchange, and represented it to be fully paid stock—all for the purpose of deceiving investors; that he was thereby deceived, and induced to buy the one hundred shares mentioned in his complaint. But he shows that his purchase was made

nearly two years after the defendants put their stock on the market with the false representation that it was fully paid, and he does not show that he purchased from the defendants, or from either of them. The real question, therefore, presented by the pleadings, but nowhere discussed in the argument, is this: The stock of a corporation is divided into 25,000 shares; five persons, holding 250 shares, acting as directors of the corporation, issue to themselves the remaining 24,750 shares; they give nothing in exchange, but label the stock "fully paid," and, for the purpose of making a market, represent that it is fully paid, or, in other words, that the corporation, on issuing the stock, received money or property in exchange equal to its par value. A stranger, believing this false representation, buys shares,—not from either of the five directors, but from another stranger,—and finds on investigation that he has become a member of a corporation which, instead of having a paid-up capital of $2,500,000, has only property incumbered for more than it is worth. Has he an action against the directors to recover the sum so paid to a stranger? As this question has not been touched in the argument, it must be left undecided. Upon the case as presented, I concur in the judgment of affirmance.

Justice Harrison took no part in the decision of the foregoing case.