[L. A. No. 2122. · In Bank.—October 8, 1909.]

## JAMES G. CORTELYOU, as Administrator of the Estate of John G. Cortelyou, Deceased, Appellant, v. IMPERIAL LAND COMPANY (a Corporation), et al., Respondents.

CORPORATION—ISSUANCE OF STOCK WITHOUT CONSIDERATION—AGREE-MENT TO SELL AND ACCOUNT FOR PROCEEDS.—The issue of the stock of a corporation without consideration, simply upon the agreement that the person to whom it was issued would sell it and turn the proceeds over to the corporation, is illegal under the laws of this state, which forbid corporations to issue shares of stock except for money paid, property or labor received, and the parties receiving the stock do not thereby become stockholders.

ID.—EFFECT OF SUCH ISSUE—TREASURY STOCK.—Except as to *bona fide* purchasers of the stock so issued, the effect of such unauthor-ized issue is to leave the stock in the treasury, subject to issue by the corporation, as completely as though the void certificates had never issued.

ID.—SUBSEQUENT PURCHASE OF STOCK—RIGHTS OF PURCHASER.—A sub-sequent purchaser of a portion of such stock, with knowledge of the facts affecting its issue, who consented that it should be evidenced by certificates in the hands of the person to whom it was issued under such agreement, became a shareholder to the extent of his purchase, and entitled to have transferred to him certificates evidencing his ownership.

ID.—AGREEMENT TO ACCOUNT FOR PROCEEDS.—Where stock is issued to a person in consideration of services theretofore rendered the cor-poration, his incidental agreement to turn over to the corporation the proceeds from a sale of a certain portion thereof is without consideration.

ID.—VALID CONSIDERATION FOR ISSUE—RIGHT OF PURCHASER TO CER-TIFICATES.—If such stock were issued for such agreed consideration, and without fraud, it became the property of the person to whom it was issued, and a subsequent purchaser from him, with knowl-edge of his agreement to turn over to the corporation a portion of the proceeds of sale, is entitled to receive certificates for the stock so purchased.

ID.—RETENTION OF ORIGINAL CERTIFICATES BY SELLER—ACTION TO EN-FORCE ISSUANCE OF NEW CERTIFICATES—PARTIES.—The subsequent purchaser of such stock, notwithstanding the retention of the cer-tificates by the person to whom they were originally issued, is entitled to maintain an action against the corporation for the issuance of new certificates to himself. In such action, the person having possession of the original certificates is not a necessary party, there being no trust relation between him and the purchaser.

Id.—Persons Claiming Adverse Interests in Stock Proper Parties.
—In such action, persons claiming an interest in the ·stock, as
successors to the person to whom the certificates were originally
issued, are proper parties.

Id.—Laches—Delay in Commencing Action for Issuance of Cer-
tificates.—A stockholder in a corporation may maintain an action
to enforce the issuance of certificates in his name, irrespective of
any lapse of time in the commencement of the action, if no loss
or injury has resulted to an innocent person by reason of the delay.

APPEAL from a judgment of the Superior Court of Los
Angeles County. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

M. M. Meyers, and James P. Clark, for Appellant.

Edwin A. Meserve, Paul H. McPherrin, and Walter M.
Rose, for Respondents.

THE COURT.—This case was originally before the district
court of appeal for the second appellate district for decision,
but that court being unable to concur in a judgment the
cause was brought here for further consideration. Accom-
panying the transfer of the case here are the several opinions
of the judges of the district court of appeal. One of those
opinions signed by the majority of the judges of the district
court of appeal is as follows:—

"Action in equity to establish the right of plaintiff as the
administrator of John G. Cortelyou to 250 shares of the
capital stock of the defendant, Imperial Land Company, and
to require the corporation to issue to the administrators cer-
tificates evidencing such ownership.

"A demurrer to the complaint was sustained with leave to
amend, and upon failure to amend the complaint, judgment
went for defendants and against plaintiff, from which judg-
ment this appeal is taken.

"While the complaint is not happily worded, the same may
fairly be construed as alleging the following facts, namely:
That one Cortelyou, deceased, plaintiff's intestate, purchased
from defendant corporation, through one Ferguson, its gen-
eral manager, 250 shares of its capital stock, paying therefor

an agreed price which it is averred was at the time the reasonable value thereof. That prior thereto the corporation had issued all of its shares of stock to Ferguson, its general manager, in payment for services rendered, but upon the agreement that certain of the stock so issued should be sold by Ferguson as treasury stock and the proceeds turned over to the corporation, and that certificates should be issued of such treasury stock in the same manner and with the same effect as though such stock had been retained in the treasury of the company unissued. That when Cortelyou purchased the shares of stock it was agreed that the stock should be held by one Chaffey as trustee and voted by him under a pooling agreement, but that when the full purchase price was paid the purchaser should receive a copy of the certificates of stock with the pooling agreement indorsed thereon; such copy of the certificates to be in form so as to enable the holder to transfer the same by indorsement. That no certificates were ever issued to Cortelyou as agreed, but the certificates evidencing the shares of stock purchased by Cortelyou continued to stand in the name of Ferguson. That long after the purchase by Cortelyou of the stock Ferguson assigned and transferred all the stock of the corporation in his name, including that of Cortelyou, to the defendants other than the corporation, who took the assignment of such certificates with full knowledge of Cortelyou's rights, and upon an agreement that when the voting pool was dissolved they would cause to be issued to Cortelyou his certificates for the stock so owned by him. It is alleged that the pooling agreement was, by mutual consent, dissolved; when it is not made to appear. The demand for such certificates by plaintiff in his representative capacity is alleged, as is the refusal to issue the certificates as agreed. The prayer is that the right of plaintiff to this stock be established and the corporation be ordered to issue certificates therefor; and other allegations with reference to the rights claimed against the parties holding the certificates, not necessary to mention in connection with the consideration of the demurrer.

"The demurrer was a general one, and upon the grounds that the complaint disclosed a bar of the statute of limitations, a misjoinder of parties defendant, and that certain ambiguities existed, by reason of which it could not be determined

how or in what manner the agreement to sell the shares had been made, or how the defendant could agree to sell the stock when all of the stock had been issued.

"Treating the complaint as averring that certain of the stock including that purchased by Cortelyou, was issued by the corporation to Ferguson without consideration, simply upon the agreement that he should sell the same and turn the proceeds over to defendant, such issue is forbidden by the constitution and statutes of this state, for corporations are forbidden to issue shares of stock except for money paid, property, or labor received, and shares issued in violation thereof are void, 'and the parties receiving them do not thereby become shareholders' (*Kellerman* v. *Maier*, 116 Cal. 424, [48 Pac. 377]); and the effect of which issue would be to leave in the treasury, subject to issue by the corporation, the stock so improperly issued as completely as though the void certificates had never issued. This, of course, presupposes that no innocent party should have acquired rights on the faith of the issue. But, notwithstanding the unwarranted character of the issue, if such an allegation be considered as made, Cortelyou, with knowledge of the fact that the stock was thus issued, bought the same and consented that it should be evidenced by the certificates thus in the hands of Ferguson. The shares, as distinct from the evidences of ownership, were by such purchase vested completely in Cortelyou, and he became thereafter a shareholder to the extent of his purchase, and, under his agreement, entitled to have transferred to him the evidences of ownership. Ferguson did not hold the property of Cortelyou after the sale; that property, which was the shares and personal property, passed with the purchase and payment of money. Upon the other hand, if we construe the complaint as alleging that the issue to Ferguson was valid, by reason of the same being on account of services theretofore rendered, the incidental agreement on the part of Ferguson to turn over to the corporation the proceeds from a sale of certain of the stock does not seem to be supported by any consideration. Nor does it appear that the agreement included any particular number of shares evidenced by any specified certificates, and whatever cause of action the corporation had against Ferguson by reason of such incidental agreement would be in the nature of an action for damages

if he failed to carry out the same. The shares having been issued to him for an agreed consideration, in the absence of fraud, the same became the property of Ferguson. It seems to us, then, that, construing the complaint as we may, the facts set out are sufficient to show Cortelyou's acquisition of the personal property by the purchase, and whether Ferguson sold the same as his own, or as part of the treasury stock of the corporation, by the sale his interest in the shares, the subject of the sale, vested in Cortelyou. 'His interest in the subject-matter ceased upon the consummation of the sale as effectually as though he had in person assigned his shares to the plaintiff.' (*Tregear* v. *Etiwanda Water Co.*, 76 Cal. 537, [9 Am. St. Rep. 245, 18 Pac. 658].) In the case last cited, it is held that where the owner of shares executes a mortgage in form sufficient to create a lien upon the shares of stock in a corporation, which mortgage is subsequently foreclosed and the property purchased at sheriff's sale, the purchaser takes all of the interest of the mortgagor and is entitled to have certificates issued to him, notwithstanding when he took the mortgage he permitted the certificates evidencing the ownership to remain in the possession of the mortgagor. We are unable to see why the same principle would not apply here, and that Cortelyou's representative, notwithstanding the retention of the certificates by Ferguson, might not have a decree as prayed for against the corporation. Ferguson, having no interest in the property, was not a necessary party to this proceeding upon the authority last quoted, the effect of which decision can only be to hold that no trust relation existed by reason of the mortgagor holding the evidences of the ownership in the shares of stock, for had such trust relation existed he would have been a necessary party to the proceeding instituted by Tregear against the water company. Our supreme court having held that he was not a necessary party, it must be held as determining that no trust relation existed. It does not follow, however, that the other defendants in this case, who occupied the position originally held by Ferguson, are not proper parties, for, as stated in the case last cited, "a decree cannot bind one who is not a party to the action, and by making him a party he may frequently be bound and questions as to him determined which would otherwise remain open and subject to future adjudication.' In

our opinion, the complaint, then, constituted a cause of action, and there was no misjoinder of parties defendant.

"Eliminating, therefore, as we do, any trust relation as arising in this transaction between Cortelyou and the defendants other than the corporation, the only question remaining is as to the right of a corporation which has received the full value of its shares to refuse to issue certificates to its stockholders simply because they may have been guilty of laches in making application therefor. The demurrer admits that in the agreement between Ferguson and the corporation, through which the shares were originally issued, it was stipulated that in the event of a sale by Ferguson, 'that certificates should be issued of such treasury stock in the same manner and with the same effect as though such stock had been retained in the treasury unissued,' which is a reserved right of cancellation in event of sale. It is not averred that the shares sold to Cortelyou were in fact issued to Chaffey under any pooling agreement, but, on the contrary, it is alleged that the certificates 'continued to stand in the name of Ferguson.' Under this agreement between the corporation and Ferguson, no intervening parties having acquired an interest, it became the duty of the corporation, upon the sale to Cortelyou, to issue to him his certificates, unless the subsequent agreement between Ferguson and Cortelyou, that the certificates issued to Ferguson should represent Cortelyou's shares and should so stand in Ferguson's name until the pooling agreement was dissolved, would excuse the corporation from the further issue to Cortelyou during the existence of this pooling agreement. Assuming this, nothing appears in the complaint indicating that such time has elapsed since the dissolution of the pooling agreement as in equity would bar plaintiff from relief, were it even conceded that laches could be invoked by the corporation as a reason for the non-issuance of the evidences of ownership in property sold under the circumstances of this case. Cortelyou and his estate have, under the allegations of this bill, been continuously the owners of these shares ever since their purchase, entitled to dividends, and subject to all the liability of shareholders; and to say that the election to continue such relation without affirmative evidence upon the books, or by certificate, would destroy the property right, cannot be admitted. The

property right existing, the right to demand the evidence from the corporation, which under the law and by the agreement it is required to furnish, is a right which may be enforced without reference to the lapse of time, if no loss or injury has resulted to an innocent person by reason of the delay. (Cook on Stockholders, sec. 61; Helliwell on Stock and Stockholders, secs. 110-114.)

"We are of opinion, therefore, that the court erred in sustaining the demurrer to the complaint; and for that reason the judgment is reversed and cause remanded for further proceedings."

We are satisfied that the foregoing opinion correctly disposes of the matters presented for determination on this appeal. We adopt it as the opinion of this court and order that the judgment be reversed and the cause remanded.