[Civ. No. 3480.   Second Appellate District, Division One.—March 26, 1921.]

## JOHN C. WINTERS et al., Appellants, v. LYCURGUS LINDSAY, Respondent.

[1] CORPORATIONS—ISSUANCE OF STOCK—VIOLATION OF PERMIT—VA-LIDITY OF STOCK—COLLATERAL ATTACK.—The fact that a corpora-tion, at a time when the Investment Companies Act (Stats. 1913, p. 715) was in effect, issued shares of its capital stock in exchange for certain property the value of which did not conform to the value required and stated in the permit or certificate issued by the state corporation commissioner did not render such stock void, and the issuance thereof is not subject to collateral attack.

APPEAL from a judgment of the Superior Court of Los Angeles County. Dana R. Weller, Judge. Affirmed.

The facts are stated in the opinion of the court.

Oliver O. Clark, Claud B. Andrews and Carnahan & Clark for Appellants.

A. L. Abrahams and P. B. D'Orr for Respondent.

JAMES, J.—Plaintiffs by this action sought to recover from the defendant damages alleged to have been sustained by reason of the asserted fact that certain corporate stock sold to the plaintiffs by the defendant was of no value. They were denied any relief by the judgment, and this ap-peal has resulted. The record consists of the judgment-roll only.

The corporate stock secured by the plaintiffs from the defendant consisted of 19,944 shares of American Bond & Mortgage Company, a California corporation. The stock

was given by the defendant as part consideration for real property of the plaintiffs located in the state of Nevada. The trial court found that this stock was worth the sum of $1.25 per share, which was the value which the plaintiffs alleged defendant represented it to have at the time the exchange of properties was made. There is no contention that the stock as to its value did not fulfill all of the representations made by the defendant, but as a basis for recovery plaintiffs have urged the claim that the stock had been illegally issued to defendant—that it was void stock in consequence, and hence they received no value whatsoever. At the time the stock was issued the American Bond & Mortgage Company possessed in its treasury more than the number of shares that were represented in the certificate which defendant transferred to the plaintiffs; hence the question of an overissue is not involved. The determination of the case rests upon a solution of the question as to whether corporate stock, if not sold for the amount required and stated in the permit or certificate issued by the state corporation commissioner, is void for all purposes and in whosoever hands it may be. The plaintiffs here stand in the place of an innocent holder for value. To make clearer the contention of plaintiffs, further facts as expressed in the findings of the court are necessary to be stated: Defendant obtained the shares of stock in the American Bond & Mortgage Company by exchanging therefor a large number of shares in a corporation called ''The State Investment Company.'' Before this exchange was made the first-named corporation obtained from the commissioner of corporations a permit authorizing the sale of a large number of its shares, the permit containing, among other statements, the following: ''To sell and issue not exceeding 1,000,000 shares in exchange for property, the fair and reasonable net market value of which, after deducting therefrom all expenses incurred by such applicant in acquiring the same, shall, at the time of such exchange, equal or exceed 110 per cent of the par value of the shares issued therefor. Said shares shall be sold or issued *only* for a consideration hereinabove recited.''

The court found that these shares in the State Investment Company at the time they were exchanged for the American Bond & Mortgage Company's stock ''had no market value

whatsoever, and the value thereof, if any, was exceedingly speculative and doubtful and did not in any event exceed fifty cents per share; and at all times herein mentioned the value thereof as shown by the books and records of said State Investment Company, a corporation, did not exceed fifty cents per share.'' The expressions used in this finding are ambiguous, but it does appear therefrom that the stock exchanged by the defendant for the stock of the Bond & Mortgage Company had at least a substantial value. To be sure, if it was worth fifty cents per share, the total amount thereof exchanged by the defendant would equal but one-half the total value of the shares received by the defendant in return therefor. In order to sustain appellants' contention, it is necessary that it be held that shares of corporate stock, although authorized by a duly issued permit to be sold, are void unless there is received from the purchaser thereof, in exact measure, property of a specified value, where such a condition is stated in the permit of the corporation commissioner. The transaction herein referred to occurred in the year 1915. The law creating a commissioner of corporations and defining his duties as then in effect is found in the Statutes of 1913 at page 715. In that law it is provided that a permit to sell securities may be issued where compliance is made with certain forms; that the permit shall show that the ''company is authorized to sell said securities within this state on such conditions, if any, as the Commissioner of Corporations may in said certificate prescribe. . . . The Commissioner of Corporations may impose such conditions as he may deem necessary to the issue of said securities and may, from time to time, for cause, rescind, alter or amend the certificate.'' The act contains penal clauses under which a failure to comply with its terms is made punishable by a fine and, in some cases, imprisonment. The act does not contain, like the successor to it (Stats. 1917, p. 673), any clause declaring void, securities issued without complying with the requirements as to the obtaining of permits, or for a violation of the conditions thereof. It may be pertinent to here state that in the findings of the court it is also determined that the board of directors of the American Bond & Mortgage Company, by resolution adopted six months after the issuance of the stock herein referred to, attempted to repudiate the transaction

with the defendant on the ground that the exchange had been effected in violation of the terms of the permit. We think it wholly immaterial as to what the board of directors did at the time last stated in the direction of an attempt to nullify the sale of the stock. It is not determined by the court that through any collusive agreement between the defendant and the Bond & Mortgage Company the stock was fraudulently issued; in fact, nothing appears which authorizes the assumption that the officers of the Bond & Mortgage Company acted in other than the utmost good faith in making the exchange with the defendant. It does appear, to be sure, in the findings that the defendant knew all about the stock which he was delivering to the Bond & Mortgage Company and had knowledge of its market value; he had knowledge, too, it is shown, of the terms of the permit issued by the commissioner of corporations. On the other hand, it is not shown that he misrepresented the value of his stock to the Bond & Mortgage Company in any way. The failure of a corporation to observe regulations governing the sale of its stock, such as those provided for in the act to which we have referred, in our opinion amounts only to an irregularity, and will not taint the transaction as being *ultra vires.* Mr. Thompson in his work on Corporations (vol. 3, 2d ed., par. 2772), states that where a corporation is authorized to perform an act for a specific purpose and performs the act for another purpose, the case does not become one of *ultra vires,* and that such a plea is not available to either party concerned. The text is illustrated by citation to a case where a state bank under its charter had power to accept stock in a national bank as security, but no power to purchase such stock as an investment. The bank purchased national bank shares and, the national bank becoming insolvent, assessment against the purchasing bank made by the controller was resisted on the ground that the purchase was *ultra vires.* It was there held that the purchase of the stock was "merely the exercise, for an unauthorized purpose, of a power existing for other and legitimate purposes" and that the defense was not available, citing *Citizens' State Bank* v. *Hawkins,* 71 Fed. 369, [18 C. C. A. 78]. This author further states: "A plain distinction is to be made between cases where a contract is *ultra vires* because clearly outside of the power granted a

corporation, and the cases where a contract, while within the general scope of granted powers, is *ultra vires* because of some particular circumstance which may or may not be known to the other contracting party. In the former case an action on the contract will not lie; while in the latter, according to many of the decisions, an action may be maintained.'' There was not an inherent lack of power in the Bond & Mortgage Company to issue and dispose of its corporate shares. It possessed the stock as a part of its treasury assets prior to the transfer of the same to defendants. Under the constitution (art. XII, sec. 11) it had the right to exchange its shares for property other than money, and it had the right (except as the conditions imposed by the commissioner affected the matter) to sell or exchange such stock on a less than par basis of valuation. The only result which would follow in the latter case would be that the rights of creditors to require the stockholders to respond in an amount equalling the difference between the price paid and the par value of the shares, would be unaffected. (*Herron Co.* v. *Shaw,* 165 Cal. 668, [Ann. Cas. 1915A, 1265, 133 Pac. 488]; *Hasson* v. *Koeberle,* 180 Cal. 359, 181 Pac. 387].) The statute in force gave to the corporation commissioner power to impose conditions on the sale of stock. **[1]** . Allowing the very broad concession that the legislature possessed the power to delegate to the commissioner of corporations authority to fix the value of the property which should be exchanged for stock, we believe that a failure to observe fully the terms of such a condition would not render the stock void. It might subject the officers of the corporation to the penalties of the law as otherwise fixed in the act. (*Yetter et al.* v. *Delaware Valley R. Co. et al.,* 206 Pa. St. 485, [55 Atl. 57].) Once admitting that the stock as issued was not void, then this action constitutes a collateral attack upon the issue, which is not allowed to be effectual. (*Hasson* v. *Koeberle, supra;* 5 Fletcher's Cyclopedia Corporations, secs. 3485, 3486.)

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 23, 1921, and a peti-

tion to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 23, 1921.

All the Justices concurred.