[Civ. No. 7255. First Appellate District, Division Two.—March 6, 1930.]

AARON MICHAELS et al., Respondents, v. PACIFIC SOFT WATER LAUNDRY (a Corporation) et al., Appellants.

Walter J. Little, Wm. B. Gilroy and Frank P. Doherty for Appellants.

J. M. Stevens, Harry Povey, B. O. Tinglof and J. E. Haley for Respondents.

NOURSE, Acting P. J.—The two plaintiffs, as stockholders in the defendant laundry corporation, sued to have it declared that the sales of treasury stock of the corporation to defendants Bull and Thompson were void. The cause was tried by the court without a jury and resulted in a judgment for plaintiffs as prayed. The defendants Bull, Fletcher and Craft joined with the corporation in an appeal from the judgment. The defendant Thompson prosecutes a separate appeal. Both appeals are presented on a joint bill of exceptions.

The two plaintiffs constituted the minority of the board of directors of the laundry company. The defendants Bull, Fletcher and Craft constituted a majority of the board. The corporation was capitalized for $200,000, divided into 200,000 shares. Seventy thousand shares had been issued and were outstanding at the time the events mentioned herein arose. Of this number Michaels owned and held 37,000 and was in control of the corporation affairs and business. The three director defendants petitioned the state corporation commissioner for leave to issue 30,000 additional shares from the treasury in order to liquidate outstanding indebtedness of the corporation. The two plaintiffs opposed the petition before the commission, but on December 15, 1925, after hearing thereon, the petition was granted upon

the condition that the stock should first be offered to existing stockholders in proportion to the stock then held by them. The permit contained the following stipulation, which is the basis of the controversy: "Sixty days after such offer shall have been made in writing to said stockholders, or upon receipt of the written waiver of such stockholders of the exercise of the right herein given to subscribe to said shares, any shares remaining unsubscribed for may be offered and sold to any other stockholders of said company, or to the public, for the consideration hereinbefore recited."

On January 5, 1926, at a meeting of the board of directors, at which the five directors mentioned were present, the matter of the sale of the additional shares was discussed. The minutes of this meeting received in evidence recite that Michaels moved "that the stock be sold at once. Mr. Pervine seconded the motion. The motion was put before the directors and discussion asked for. Mr. Michaels then stated he did not want the stock sold. The president read the permit and gave Mr. Michaels a copy. Mr. Craft and Mr. Fletcher said the permit was for the purpose of paying the mortgage, and would leave the matter in the hands of the president."

More than sixty days after this meeting the president negotiated the sale of 21,500 shares of said stock to defendant Thompson, and at the same time 600 shares of said stock were sold to defendant Bull. The funds received from these sales—$22,100—were paid into the treasury of the corporation and were used by the corporation to pay off a note and mortgage owned by the California Bank. The next meeting of the directors of the corporation was held on March 17, 1926, and at that time the president informed the members of the board that the stock for which a permit to sell had been granted had nearly all been disposed of and that the money was being used to pay off this mortgage which became due in April. No objection to these proceedings was made by any member of the board and no request or demand was made by the plaintiffs that they be permitted to purchase any portion of the stock offered. At the close of plaintiffs' case it was stipulated that the plaintiff Michaels had tendered $18,000 to purchase his proportion of the stock from the corporation in accordance with the terms of the permit. Objection was made to this tender

on the ground that it was too late because the corporation did not have sufficient shares to sell to the plaintiff.

No tender was made by either of the plaintiffs as individuals or on behalf of the corporation to repurchase the stock sold to either Thompson or Bull, and no offer was made to restore to them the moneys received by the corporation from them and used by the corporation in the liquidation of its indebtedness. Notwithstanding this the trial court rendered judgment for the corporation, declaring the sale void and ordering the certificates canceled without restoration to the purchasers of any part of the profits of the alleged "void" sale.

At the beginning of the inquiry it is proper to determine the exact nature of the action. It is an action brought by the corporation to recover for some conceived wrong done to the corporation itself, but because the majority of the governing board of directors refuses to prosecute the action in the name of the corporation it is in reality instituted by two of the stockholders on behalf of the corporation and the latter is joined as a party defendant. There are certain features of the proceeding in which the plaintiffs, particularly Michaels, are personally interested beyond the redress which they seek for the corporation. Thus, he alleges that by reason of the sale, he lost control of the corporation, and the inference is that if the stock is returned to the treasury and he is permitted to purchase his share this control would be retained. But the plaintiffs seek no relief, as individuals, against any of the defendants, as they might have done, and the prayer of the complaint and the judgment which followed it returning to the treasury of the corporation the entire number of 22,100 shares to be resold for the full price of $1 a share in accordance with the terms of the permit manifestly stamps the corporation as the real party plaintiff. In their briefs filed on this appeal these plaintiffs insist with some spirit that they are not suing on behalf of the corporation, but that they are merely seeking individual redress. However, there has been filed with us an appeal in another action entitled *Michaels et al.* v. *Pacific Soft Water Laundry et al.*, No. 7256 (*post*, p. 366 [286 Pac. 172]), which is an action brought under section 315, Civil Code, to determine the validity of an election of directors of the laundry corporation. With

the papers on the appeal in the instant case the parties have filed a stipulation that these two cases may be consolidated for all purposes of appeal and hearing. In the brief filed by these plaintiffs in case No. 7256 they state that the instant case was brought by them as stockholders ''for the benefit and use of the corporation'' for the reason that the corporation is dominated by the other defendants. We are satisfied that such is the nature of the action and that the case is like *Turner* v. *Markham*, 155 Cal. 562, 569 [102 Pac. 272], *Difani* v. *Riverside County Oil Co.*, 201 Cal. 210, 215 [256 Pac. 210], and *Eggers* v. *National Radio Co.*, 208 Cal. 308 [281 Pac. 58], an action to preserve the corporate property or corporate interests brought by a stockholder where the governing directors refused to act or were guilty of fraud or bad faith in the protection and preservation of the corporate interests.

This interest of the corporation as such is most important in connection with the appeal of Thompson. All that the respondents sought as individuals was the right to purchase their proportionate share of the stock issued and to pay therefor into the treasury of the corporation the purchase price fixed by the corporation commissioner. But to do this it was necessary that the corporation have returned to its treasury a sufficient number of said shares to enable it to sell to the respondents their quota. Thus in seeking relief for themselves they first must have the relief which they sought on behalf of the corporation—the return of the stock to the treasury. With this in view we are confronted with the question of the rights as they exist as between the corporation and the purchasers of the stock.

Thus if the respondents had control of the governing body of the corporation and sued in the name of the corporation for the cancellation of the stock what would be the rights of the corporation as between it and the stock purchasers? Manifestly, the corporation as such has no greater right and has no less obligation to do equity because it is joined as a party defendant by the minority of the board than if it had been made the real party plaintiff through the action of a majority. Thus, when a corporation sues to cancel shares of stock which it has sold from its treasury and for which it has received the full purchase price it is in no better position than an individual

who sues for the rescission of a contract upon any of the grounds mentioned in section 1689 of the Civil Code. At the very threshold of such a suit it is necessary that the party seeking relief must have restored or offered to restore to the other party everything of value which he has received from him. (Sec. 1691, Civ. Code.) ■ Here the undisputed evidence is that the president of the corporation, acting under what he deemed to be the authorization of the directors of the corporation, negotiated the sale of the stock to Thompson; that he reported the transaction to the full board of directors; that the money was thereafter received and placed in the treasury of the corporation without objection or remonstrance on the part of any member of the board; that it was thereafter used for the liquidation of an outstanding indebtedness of the corporation with the knowledge and consent of the full board of directors; that the money so received was still retained by the corporation at the time of the trial and that, though one of the respondents made an offer to purchase additional stock from the corporation, no one on behalf of the respondents or on behalf of the corporation at any time made any tender or offer to restore to the appellant Thompson any portion of the benefits received from him. Basing its judgment upon the finding that the three defendant directors were guilty of fraud in making the sale to Thompson the trial court declared that all the shares of stock held by Thompson should be void, ordered the certificate to be canceled, and thus returned to the treasury of the corporation all these shares without affording Thompson any relief against the corporation. If there were any evidence supporting the finding of the trial court that the purchase made by Thompson was not made in good faith by him, but was made for the purpose of defrauding the respondents there might be justification for exacting some penalty from him, but the complaint not only failed to sufficiently charge Thompson with fraud in this respect, but when the plaintiffs came to their proof they showed that they had nothing but mere suspicions upon which to base their allegations. When Michaels was asked the direct question as to whether he maintained that Thompson conspired with the other directors in the sale of the stock he answered that he had no proof, but he entertained a suspicion that Thompson

had made arrangements with the others; however, he would not say that this was true. No other testimony of any character connected Thompson in the slightest degree with any conspiracy or fraudulent scheme in connection with the sale, but the remarkable situation was that when this appellant attempted to prove his good faith, that he purchased the stock in the regular course of business; that he was informed by the president of the corporation prior to his purchase that written notice had been given to all the other stockholders and that written waivers had been received from them, and that he purchased the stock without notice or knowledge that anything irregular had been done, each question and each offer of proof was objected to on the ground that it was "immaterial," and every objection on that ground was sustained. Then, without the slightest evidence to support the findings and with a rigid denial of every attempt to prove the facts the trial court made elaborate findings adverse to this appellant on every issue of fact involving good faith, knowledge, conspiracy and fraud. He was thus skinned, drawn and quartered without the opportunity even to offer a prayer.

To the charge that these findings are wholly unsupported by any evidence the respondents make no reply; the only defense made of the rulings rejecting the evidence which would have required findings favorable to this appellant is that, because the certificates of stock are not negotiable, it is immaterial whether Thompson was an innocent purchaser in good faith. But the negotiability of the instrument is beside the question. The good faith of the purchaser is of singular importance in relation to the rights of the corporation and the purchaser. In *MacDonald* v. *Reich & Lievre*, 100 Cal. App. 736 [281 Pac. 106], we said: "When a corporation issues to the public certificates of stock, regular on their face, it amounts substantially to a representation that the certificates are regular and valid. Certificates of stock so issued by a corporation, but which were irregular or void *for reasons not participated in by the stockholder*, have been held to amount to a misrepresentation and fraud upon the part of the corporation officials for which the corporation is answerable. (*Green* v. *Caribou Oil Min. Co.*, 179 Cal. 787 [178 Pac. 950]; *Sykes* v. *Pure Food Cider Co.*, 157 Iowa, 601 [138 N. W. 554]; *Windram* v. *French*, 151

Mass. 547 [8 L. R. A. 750, 24 N. E. 914].)'' (Emphasis ours.) The issue involved in that case was the sale of corporate stock without a permit from the corporation commissioner. No question of waiver of a personal right or of ratification was involved. But here, where the evidence tended to show that the corporation ratified the sale and accepted and retained the benefits, the purchaser was entitled to show that the purchase had been made in good faith and without knowledge of any infirmities. If this appellant had been permitted to make this showing then the result would have been that the *corporation* was guilty of misrepresentation and fraud as to him, and the corporation would then have been estopped to claim the invalidity of the sale. ■ The rule of the cases cited by respondents would enter here—that the transferee of certificates of stock takes them subject to ''all equities of the corporation.'' (6 Cal. Jur., p. 785, and cases cited.) But the rule upon which respondents so confidently rely forces the inquiry: What equities has a corporation against an innocent purchaser in good faith of treasury stock sold to him through the misrepresentation and fraud of the corporation? · That the corporation cannot rely on its own fraud to claim the invalidity of the sale to the injury of an innocent third party when the corporation is the party defendant is the rule of *Smith* v. *Martin,* 135 Cal. 247 [67 Pac. 779], *Daily Telegram* v. *Ocean View Oil Co.,* 65 Cal. App. 608 [224 Pac. 1006], and *Cortelyou* v. *Imperial Land Co.,* 156 Cal. 373 [104 Pac. 695]. We cannot perceive how the rule could be less applicable when the corporation is the party plaintiff.

■ It would be a reproach on the law if a party had no remedy in a case of this kind and it is no answer to say that he might sue the corporation for the loss he has suffered. The suit which the respondents have here instituted is in equity. To seek equity one must do equity, and, when the court assumes jurisdiction it has jurisdiction of all the equities in the case. To require the stock issued to appellant Thompson to be canceled and returned to the treasury of the corporation without restoring the purchase price to him is to accomplish through the guise of equity a greater fraud upon him than the fraud of which the respondents complain. The fraud charged in the complaint—the fraud

of the majority of the directors—was the fraud of the corporation, yet this judgment determines that the corporation must profit by its own fraud and that these directors who were found guilty of the fraud must also, as stockholders, incidentally profit by their own fraud. But this is not all. The minority directors who are both stockholders in the corporation are also permitted to profit by the fraud which they both so strenuously condemn.

As to the appellant Thompson the case is this—the respondents failed to plead any facts constituting fraud, conspiracy or bad faith on his part. The respondents wholly failed to prove anything more than their general suspicions of the conduct of this appellant, while the appellant was denied every opportunity of disproving these charges upon the ground that such proof was immaterial. The findings on these issues are therefore wholly unsupported by pleading or proof, and the judgment as to him must be reversed.

In the record in case No. 7256, to which we are permitted to refer by the stipulation above mentioned, it appears that the respondents might have assumed control of the governing board of the corporation some time in the year 1927. The question will therefore arise on a retrial as to this appellant whether the respondents, after they had the ability to do so, made a sufficient tender or offer to restore to him within a reasonable time. But in this connection we should add that we do not hold that, before they instituted the action, the respondents must have tendered, or offered to restore, the consideration of the sale to Thompson. They should have, by appropriate allegations in their complaint, made such tender on behalf of the corporation through the judgment. However, their failure to do so is not fatal to their cause of action because, this being a case in equity, the court may do exact justice between the parties and is not limited to the offers and demands of the pleadings. (*Wills* v. *Porter*, 132 Cal. 516, 521 [64 Pac. 896]; *Connell* v. *Crawford*, 92 Cal. App. 715, 719 [268 Pac. 948].) Thus, it is said, in *Kelley* v. *Owens*, 120 Cal. 502, 511 [47 Pac. 369, 52 Pac. 797], that one of the exceptions to the rule as to restoration, is "where, without any fault of plaintiff, there have been peculiar complications which make it impossible for plaintiff to offer full restoration, although the circumstances are such that a court of chancery may by

a final decree fully adjust the equities between the parties.'' (*California etc. Co.* v. *Schiappa-Pietra,* 151 Cal. 732, 739 [91 Pac. 593]; *Rosemead Co.* v. *Shipley Co.,* 207 Cal. 414 [278 Pac. 1038].)

The fact that the respondents were in the minority in the board of directors might excuse them from making an offer of restoration to Thompson because, in the final analysis, such restoration must be made by the corporate entity, but, if they have since assumed control of the corporation affairs, and no offer has been made on behalf of the corporation through them, the exception to the rule hereinbefore noted would no longer apply.

The cause as to Thompson, therefore, must be retried upon the issues whether the complaining stockholders have in fact assumed control of the corporate entity, whether, after assuming such control, a sufficient tender and offer to restore was made within a reasonable time, and whether, by accepting the benefits of the sale of the stock to Thompson the corporation, and these respondents, validated the sale by ratifying the transaction. But here it should be noted that, if on a retrial as to the other appellants, judgment should go to them, such judgment would, of course, inure to the benefit of appellant Thompson. [And also that, because of the allegations relating to the pledge of this stock to the Marine Bank before this suit was commenced the bank is a necessary party to this litigation, and that, if these allegations are found to be true, then the corporation may no longer assert the invalidity of the stock under the settled rule of the cases cited.]*

As to the other appellants, the cause must be reversed for the manifest errors occurring throughout 'the trial which denied to them the right to make any defense to the charges in the complaint. One hundred and eighty-two specifications are assigned as error in this respect. It would serve no purpose to consider these exceptions separately or to state how many of these constitute reversible error. It is sufficient to state generally that, stripped of all its trimmings, this is an action to cancel a contract for the sale of corporate stock upon the ground that the sale violated the conditions contained in the permit

---

*REPORTER'S NOTE.—This language inclosed in brackets was stricken out on denial of rehearing.

of the commissioner of corporations. To the issue of fraud charged to the three directors, defendants endeavored to prove: First, that they had complied with the spirit and purpose of the permit; second, that the stipulations therein for written notice and written waiver were expressly waived by the respondents; third, that the president of the corporation was authorized by the unanimous vote of the directors, including these respondents, to sell the stock in the manner in which he did; fourth, that the corporation and these two respondents ratified the sale and accepted the benefits thereof, and fifth, that the corporation as the real party plaintiff has failed to take the necessary steps to enable it to cancel the contract of sale.

█ Upon the first three points noted these appellants sought to prove that they had given to the respondents written notice as required by the permit when they handed them a printed copy of the commissioner's permit, and that, at the meeting held on January 5th, the directors voted unanimously to authorize the president to sell the stock in accordance with his own judgment. Such evidence was not objectionable under the parol evidence rule. In *Lawrence* v. *Premier Indem. Assur. Co.*, 180 Cal. 688, 697 [182 Pac. 431, 435], the Supreme Court said: "But the minutes of a meeting are not a written instrument. Their function is merely to act as a written record of what took place at the meeting. That record may be true or it may not be, and in the absence of the element of estoppel, as where a party has acted in justifiable reliance upon the minutes, it is permitted to the corporation or to anyone else to show what actually did take place at the meeting. (*Gilson etc. Co.* v. *Gilson et al.*, 51 Cal. 341; *Boggs* v. *Lakeport etc. Assn.*, 111 Cal. 354 [43 Pac. 1106]; 7 R. C. L., p. 154, sec. 126.) In the present case there is no element of estoppel, and it was permissible for the defendants to show the full transaction, although but a part of it appeared in the minutes." Here no element of estoppel was present in so far as the respondents were concerned, but the evidence was admissible not only for the purpose of disclosing what actually did take place, but as tending to prove the defense that the respondents waived the right to written notice and written waiver. █ Anyone may waive the advantage of a law intended solely for his benefit. (Sec. 3513, Civ.

Code.) He may, of course, waive a right given to him by contract or otherwise. The effect of the condition imposed by the corporation commissioner was to give to each stockholder an option to buy a *pro rata* share of the new stock. Having such an option, it was wholly proper for the appellants to seek to prove that the respondents did not exercise it and did not demand delivery within a reasonable time as required by section 1756 of the Civil Code. It is sufficient to say that the evidence designed to establish these defenses was improperly denied admission.

██ Under the fourth point mentioned it was competent for these appellants to show the acts of the respondents tending to prove that they ratified the transaction and accepted the benefits thereof without protest. Respondents planted their case firmly on the strict wording of the permit providing that a waiver of the right to purchase must be in writing. Now, if no express waiver of this right could be made unless in writing, the same result might have been reached by a ratification. Herein arises the important distinction between those corporate acts which are *ultra vires* and those which are merely irregular. ██ Generally speaking, those acts which are wholly beyond the corporate powers are void and cannot be ratified by any subsequent act of the corporation. But when an act is merely irregular because the corporate officers have failed to follow some statutory regulation or condition it would be more proper to say that the act is voidable rather than void. ██ A corporation has power to sell its stock for a valuable consideration. (Const., art. XII, sec. 11.) Limitations and conditions upon a manner of sale can be imposed by the legislature. But, the conditions which the legislature may exact, it may also excuse. It is wholly competent, therefore, for the legislature to declare, as it has done, that when these conditions are for the benefit of an individual, and not for the public, the individual may waive them. It is equally true that the breach of such conditions by the corporate officers may be ratified by the corporation. ██ Thus, where corporate stock has been sold through the fraud of the corporate officers the corporation is estopped, after having received and retained the benefits of the transaction, from claiming that the issue of stock is void. (*Winters* v. *Lindsay*, 52 Cal. App. 93, 96 [198 Pac. 43]; *Smith* v. *Martin*,

135 Cal. 248, 251 [67 Pac. 779]; *Eva Estate* v. *Oakland B. & M. Co.*, 40 Cal. App. 515, 520 [181 Pac. 415]; *American Wire-Nail Co.* v. *Bayless*, 91 Ky. 94 [15 S. W. 10, 11]; *Central Transp. Co.* v. *Pullman's Car Co.*, 139 U. S. 24, 60 [35 L. Ed. 55, 11 Sup. Ct. Rep. 478].)

Disregarding the sale to Bull, who had full knowledge of all the transactions, but directing our attention solely to the sale to Thompson, we must conclude that the sale to him was not *ultra vires* in the strict sense. It would be more proper to say that the sale was voidable rather than wholly void because it could have been "validated" by the waiver by the respondents of their privilege to purchase, or by their ratification after the sale, which meets the same purpose.

Under the fifth point mentioned it was competent for these appellants to show that the respondents had taken no steps to restore or offer to restore to the purchaser of the stock the consideration which the corporation had received. To this the respondents answered that they were not in control of the affairs of the corporation and were, therefore, prior to the commencement of the action, in no position to make such an offer. However, the evidence was admissible for the purpose of showing that the corporation, acting through its entire directorate, had ratified the sale and accepted the benefits, and that no offer had been made by the respondents, either directly or through the judgment prayed for, to restore the consideration. The cause must be reversed as to these appellants, with directions for a new trial on all the issues, but as to the appellant Thompson the retrial is confined to the issues heretofore mentioned.

Judgment reversed.

Sturtevant, J., and Dooling, J., *pro tem.*, concurred.

A petition for a rehearing of this cause, and a petition for leave to offer additional evidence, were denied by the District Court of Appeal on April 5, 1930, and the following opinion then rendered thereon:

THE COURT.—In their petition for a rehearing in cause No. 7255 respondents criticise the paragraph of the opinion

reading: "And also that, because of the allegations relating to the pledge of this stock to the Marine Bank before this suit was commenced the bank is a necessary party to this litigation, and that, if these allegations are found to be true, then the corporation may no longer assert the invalidity of the stock under the settled rule of the cases cited."

Respondents now offer in this case to prove that the pledge of the stock of the Marine Bank was fully satisfied and that the loan was repaid. Whether this was done before the trial of the cause is not stated. However, the language referred to was not necessary to the opinion and is, therefore, stricken out.

Respondents also complain of the portion of the judgment limiting the issues on the retrial as to appellant Thompson, which withdraws from the retrial the issue of fraud as to this appellant. This was done because the parties have had their day in court on that issue. The respondents failed to prove anything but a suspicion of fraud, while the only competent evidence on the subject, including the presumptions and inferences which must be drawn, compelled us to find in favor of this appellant on that issue.

In a separate petition the respondents ask leave to present additional evidence under section 956a of the Code of Civil Procedure. The proffered evidence relates to the matters of restoration and ratification. It does not include the issues which must be retried as to parties other than Thompson. As we pointed out in the original opinion, a judgment for these parties would require a judgment for Thompson, but a judgment adverse to them would not necessarily conclude the case as to this appellant.

The petition for a rehearing and the petition for leave to offer additional testimony are both denied.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 5, 1930.