[L. A. No. 4918. Department One.—July 5, 1919.]

JOHN D. LAWRENCE, Appellant, v. THE PREMIER IN-
DEMNITY ASSURANCE COMPANY (a Corporation),
et al., Respondents.

[1] CORPORATIONS—ACTION FOR CONVERSION OF STOCK—PLEADING—AN-
SWERS—NONPERFORMANCE OF SERVICES—SPECIAL DEMURRER—ER-
RONEOUS OVERRULING WITHOUT PREJUDICE.—In an action against a
corporation and the majority of its directors to recover for the al-
leged conversion of shares of the corporation's stock belonging to
the plaintiff, where the answers, among other things, pleaded that
the stock certificate had been made out under an agreement with
the plaintiff that it was to be retained in the possession of the
treasurer of the corporation until plaintiff should have performed
certain services that he had theretofore agreed to perform for the
corporation, and that such services had not been performed, error in
overruling a special demurrer to such answers on the ground that
they failed to show what the certain services were was without
prejudice, in view of the fact that it appeared at the trial that
the plaintiff knew just what services the defendants claimed he had
agreed to perform and was not taken by surprise by their proof
with relation thereto.

[2] APPEAL — ALTERNATIVE METHOD — REPORTER'S TRANSCRIPT—PRES-
ENTATION FOR CERTIFICATION — NOTICE.—Where the record on ap-
peal from a judgment is prepared under section 953a of the Code
of Civil Procedure, the reporter's transcript is not to be refused
consideration because notice of its presentation to the trial judge
for certification was given by mail and specified a time for pres-
entation but two days removed.

[3] CORPORATIONS—ACTION FOR CONVERSION OF STOCK—OWNERSHIP OF
PLAINTIFF—PLEDGE AS SECURITY FOR PERFORMANCE OF SERVICES—
FINDINGS—PLEADING—EVIDENCE.—In an action for the conversion
of stock, where the plaintiff's pleadings and proof were that the
plaintiff was the unconditional owner of the stock, and the defend-
ants' pleadings and proof were that he was to become such owner
only upon the occurrence of a certain condition, the time for which
had passed without its happening, the finding that the plaintiff was
the owner of the stock, but that it had been pledged with the
defendants as security is not responsive to the issues.

[4] ID.—EVIDENCE—MINUTES OF MEETING—PAROL TESTIMONY.—Min-
utes of a corporation meeting are not a written instrument, and in
the absence of the element of estoppel, as where a party has acted
in justifiable reliance upon them, it is permitted to the corporation
or to anyone else to show what actually did take place at the
meeting.

[5] ID.—CONTENTS OF MINUTES — PAROL EVIDENCE INADMISSIBLE.—
Testimony showing that the minutes of a corporation meeting are
not a full or true record of what took place at the meeting is not
the same as testimony as to the contents of the minutes, and tes-
timony of the latter sort is not competent because it is an en-
deavor to prove the contents of a writing by evidence other than
the writing itself.

[6] ID.—CONTRACT—WRITTEN PROPOSAL—ACCEPTANCE—PAROL TESTI-
MONY OF CONDITIONS.—When a proposal, even one in writing, is
made and accepted, it is permissible to show that it was accepted
with conditions or qualifications, or that accompanying the accept-
ance and in reality forming part of it, terms in addition to those
set forth in the proposal were exacted by the acceptor.

[7] RECEIPTS — PAROL EVIDENCE.—Writings which are receipts, but
which also contain contractual terms and either purport to be, or the
evidence shows them to be, the written memorial of the full under-
standing between the parties are written contracts not to be altered
or added to; but unless a receipt appears to be of this character,
the "parol evidence" rule has no application to it.

APPEAL from a judgment of the Superior Court of San
Diego County. W. A. Sloane, Judge. Reversed.

The facts are stated in the opinion of the court.

Hamilton & Lindley for Appellant.

E. S. Torrance for Respondents.

OLNEY, J.—The Premier Indemnity Company and the
San Diego Land and Mortgage Company are the same cor-
poration. This action is against it and three of its five
directors to recover for the alleged conversion by them of 175
shares of the corporation's stock belonging to the plaintiff.
The defendants had judgment in the lower court and the
plaintiff appeals.

Two preliminary matters should be disposed of before con-
sidering the merits of the case. The first of these is the con-
tention of the appellant that the lower court erred in over-
ruling a special demurrer to an affirmative defense pleaded
by the answers. The complaint alleged in brief that the plain-
tiff was the owner of the stock in question, and such owner-
ship was evidenced by a stock certificate issued by the cor-
poration in the name of the plaintiff, and that the defendants
converted it to their own use on a certain day. The answers,

among other things, pleaded that the stock certificate had been made out under an agreement with the plaintiff that it was to be retained in the possession of the treasurer of the corporation until "said plaintiff should have performed certain services that he had theretofore agreed to perform for said corporation," and that he had not performed these services and had wrongfully secured possession of the certificate. The answers contained nothing showing what the "certain services" were which it was alleged the plaintiff was to perform and a special demurrer was directed to this point. Apparently the demurrer was good. Certainly respondent's counsel in his brief before us makes no attempt to show the contrary, but relies upon the proposition that the plaintiff has not been prejudiced by the ruling, if erroneous. His position in this respect is sound. [1] The plaintiff was in nowise misled or prejudiced. He knew, in fact, exactly what services the defendants claimed he should have performed and had not. He had been president and a director of the corporation and as such had himself been present at the directors' meeting, when the dispute between him and the three defendant directors came to a head and when the alleged act of conversion was committed by the passage of resolutions canceling his stock for the nonperformance by him of services called for by a previous contract in writing. At the trial it was these same services whose nonperformance was relied upon as justifying the action of the defendants. Under these circumstances the plaintiff was not taken by surprise and no prejudice was worked upon him by not requiring the answers to state with particularity the services in question, although as a matter of correct pleading this should have been done.

[2] The second preliminary matter to be considered is the contention on behalf of respondent that the reporter's transcript—the record having been prepared under section 953a of the Code of Civil Procedure—cannot be considered, because proper notice of its presentation to the judge of the trial court for certification was not given. The objections to the notice are not that no notice was received, for it apparently was, and counsel appeared at the time specified, but are that it was given by mail and specified a time for presentation but two days removed. The notice which is required is one by the clerk of the court and not by the parties. The sections of the code requiring notice to a party to be given by personal

service where the attorneys have their offices in the same city do not apply. There is no provision requiring notice by the clerk to be given by personal service, and such requirement of a public official would be burdensome in a degree out of all proportion to any advantage and should not be exacted. It is enough for the clerk to give notice by mail. As to the objection to the time of notice, it is sufficient to point out that the requirement of the statute is simply that the time specified be *within* five days of the giving of the notice. If the time allowed be too short for a sufficient examination of the transcript, a request should be made to the court for further time. No complaint is made in this case that the transcript is not correct or that sufficient time for its examination was not in fact allowed before its final certification.

Passing now to the merits, it appears that the defendant corporation was organized in San Diego in the spring of 1911 for the purpose of engaging in the business of accident insurance. The plaintiff was the primary organizer of the company and was its president and a director. On March 21, 1911, he made a contract in writing with the company whereby he assigned to it certain manuscript books on insurance, and policy and other forms, for use in the company's proposed business. He also agreed to devote his entire time to completing the organization of the company, to obtaining the requisite authorization to do business from the state insurance commissioner, and to securing subscriptions for its entire capital stock. In return for the things so assigned and the services to be performed by him, the contract provided that he was to receive twenty-five per cent of the company's entire capital stock, or five hundred shares. Of these five hundred shares, a certificate for two hundred was to be made out practically at once, but to be held by the treasurer of the company until all of its capital stock had been paid up. The remaining three hundred shares were not to be issued until the agreement had been fully performed by the plaintiff.

The company could not write insurance until it had twenty-five per cent of its capital stock paid in and could not continue to write insurance unless all its capital stock was paid in within a year from the time of filing its articles (Pol. Code, sec. 584). About the 1st of October, 1911, the company made application to the state insurance commissioner for a permit to do business on the ground that twenty-five per cent of its

stock had been paid in. The commissioner in reply wrote to the company, saying that the examination of his department showed that twenty-five per cent of the capital stock had been paid in and that he considered it his duty to issue the permit, that, however, the contract with the plaintiff was uncertain as to whether he was to be entitled to his twenty-five per cent of the stock when the company should receive its first permit or when all the capital stock was paid in, and suggesting that this uncertainty should be cleared up. To this the plaintiff replied by letter, saying, in effect, that the contract meant that he was to give his services to the company from January 23, 1911 (the date of filing of the company's articles of incorporation), to January 23, 1912 (the date by which all the capital stock of the company had to be paid in), and that he was to receive his stock only when all of his services had been performed. The contract was in fact somewhat uncertain on its face in the particular pointed out by the commissioner and this letter of the plaintiff must be taken as removing the uncertainty and establishing the fact that he was to receive his stock only upon the company being completely organized and its capital stock fully paid in and that this was to be done by January 23, 1912.

The letter of the commissioner also pointed out that when it became necessary for the company to show that its capital had been fully paid in, a question would arise as to whether this could be shown as to the plaintiff's twenty-five per cent and the company might at that time be considerably embarrassed. Then followed some other tart correspondence between the plaintiff and the commissioner, the outcome of which was a decision by the plaintiff and the other directors to make a new arrangement between the plaintiff and the company. The essential point in dispute between the parties is as to what this new arrangement was.

The arrangement was made at a meeting of the directors on October 11th but was not covered into a single and complete written instrument. The defendants were permitted over the objection of the plaintiff to show that a part of the arrangement was purely oral and what such part was. Passing by the objection of the plaintiff to this testimony and assuming its truth, as we must in view of the finding of the trial court, what took place between the plaintiff and the defendants was substantially this:

The plaintiff called an informal meeting of the directors on October 10th, to consider the objections by the insurance commissioner to his contract. He stated to the directors that the commissioner had advised that it would be satisfactory to him if the company would get rid of the plaintiff's contract and show that the two hundred shares, the certificate for which had been issued in the plaintiff's name and deposited with the treasurer of the company as provided in the plaintiff's contract, had been paid for. The plaintiff then proposed that the contract be rescinded, that the company pay him twenty thousand dollars for his services to date, that he immediately purchase the two hundred shares for twenty thousand dollars, and leave the shares with the treasurer of the company until he had completed his original contract in all particulars. After some discussion the directors agreed to this except that the two hundred shares were cut to 175. The understanding as accepted by the plaintiff with regard to payment for the stock and its delivery was testified to on behalf of the defendants as follows: "Doctor Kendall [one of the directors] then said: 'The company will issue their check to you for seventeen thousand five hundred dollars and you are to give the company a check for seventeen thousand five hundred dollars. The understanding is that Mr. Vogt is to hold the new shares of stock just the same as he is holding the two hundred shares of stock, until you have fully completed your contract and sold all of the balance of the stock. If you do not complete the organization of the company, you are not to get anything. We are doing this to help you get the temporary license.' "

The following day a formal meeting of the directors was held to carry out the plan agreed upon. The minutes show merely that the plaintiff made an offer in writing to cancel his contract upon receiving seventeen thousand five hundred dollars for services to date, and that this offer was accepted and the payment to the plaintiff authorized. No mention is made of the fact that the plaintiff was to return the payment to the company by way of payment for 175 shares, or that the certificate for these shares was to be held by the treasurer for delivery to the plaintiff only upon his completing the requirements of his original contract. The minutes of the meeting were prepared the day following by the plaintiff and the attorney for the company, and the latter testifies that he sug-

gested that they should show that the treasurer was to hold
the new shares until the completion by the plaintiff of his
contract, but the plaintiff stated that while such was the
understanding it was not necessary for the minutes to show it.
Incidentally it may be remarked that the testimony is that
the plaintiff was leaving San Diego that evening to see the in-
surance commissioner and wished a certified copy of the min-
utes to exhibit to him.

At the same time two checks were drawn, one by the company
to the plaintiff for seventeen thousand five hundred dollars, and
the other by the plaintiff to the company for the same amount,
and both were handed to the treasurer of the company, who
retained them thereafter. The plaintiff was also given a re-
ceipt for seventeen thousand five hundred dollars specifying
that it was in full payment for 175 shares, the certificate there-
for to be delivered to the plaintiff as soon as the certificate-
book should be received from the press. This receipt was pre-
pared by the attorney for the company under the direction of
the plaintiff, and the attorney testifies that he objected to in-
cluding the provision for the delivery of the certificate to the
plaintiff without any apparent limitation or condition, and
that the plaintiff insisted on the receipt reading as it was
finally signed, and stated he wished it to show to the insurance
commissioner.

Subsequently, under date of October 25th, the certificate was
made out and delivered by the secretary to the plaintiff. The
treasurer testifies that such delivery was without his knowl-
edge and contrary to instructions given the secretary; that
upon learning of it he requested the secretary to get the cer-
tificate from the plaintiff and the secretary agreed to do so;
that later the secretary refused to ask the plaintiff for it,
and then the treasurer did so himself and was refused, and
that he thereupon made a written demand upon the plaintiff
without result.

In the meantime, the plaintiff had failed to sell the capital
stock of the company, and the time for so doing had expired.
After this, and shortly after the demand in writing on the
plaintiff for the return of the certificate, a meeting of the
directors was held at which the plaintiff was present and at
which resolutions were adopted by vote of the three directors
who are made defendants in this action, demanding the return
of the certificate by the plaintiff, and declaring the shares

represented by the certificate to be forfeited because of the failure of the plaintiff to fulfill his contract. The date of this meeting was May 4, 1912. Two days later the resignation of the plaintiff as president was accepted. Later the secretary was instructed to and did cancel the shares on the books of the company, and some months thereafter this action was commenced, the plaintiff relying upon the action of the directors in declaring the stock forfeited and having it canceled upon the company's books as a conversion.

The foregoing are, as we have stated, the facts, either admitted or as shown by the evidence, on behalf of the defendants, On the other hand, the position of the plaintiff and the evidence on his behalf are that the arrangement of October 11, 1911, was not as testified to on behalf of the defendants in this, that his ownership of the 175 shares was not to be conditional upon his performing the services called for by his original contract, but the original contract was canceled *in toto* and he was to own the shares unconditionally.

From what we have already said concerning the pleadings in the discussion of the special demurrer to the answers, it is apparent that the issue presented by the pleadings is the same as that presented by the evidence, namely, was it or was it not a part of the arrangement of October 11th that the plaintiff was to have his stock only upon his performance of the services specified in his original contract. This being the issue, the court found, in brief, that the plaintiff was the owner of the shares on May 4, 1912, the date of the alleged conversion; that, however, he was not entitled to possession of the certificate and had wrongfully obtained such possession; that by the agreement of October 11, 1911, under which he acquired the shares, he had agreed to deposit the certificate with the treasurer of the company as *security* for the performance by him of an obligation to sell all of the company's stock and complete its organization by January 23, 1912, which he had not done, and that the defendants had not converted the plaintiff's stock by the resolutions declaring it forfeited and by its cancellation on the company's books.

[3]  These findings are attacked by the plaintiff as not supported by the evidence, and it is plain from the foregoing statement of the issue presented and the evidence with relation to it that they are not. The court evidently believed the testimony of the defendants as to the arrangement of October

11th, but there is nothing in that testimony to justify the conclusion that the plaintiff was the owner of the stock and that it was to be deposited with the treasurer of the company as *security,* that is, pledged. The testimony was to the effect that the plaintiff was not to have the stock unless he performed his obligations under the agreement of October 11th; in other words, that his ownership was conditional upon his performance. It makes no difference whether the condition to which his ownership was subject was one precedent or subsequent. In either case if the defendants' testimony is true, there was a condition, which had been broken on May 4, 1912, the date of the alleged conversion, and the plaintiff was not the owner of the stock and had lost all right to it. This is a very different thing from the plaintiff being the owner, but having pledged his stock as security, and the rights of the parties in the one case are substantially different from what they would be in the other.

On the other hand, according to the evidence for the plaintiff he was the absolute owner of the stock free of any condition or pledge. On the evidence there are but two alternatives in the case, depending on whether the story of the plaintiff or that of the defendants is believed. One is that the plaintiff was at the time of the alleged conversion the absolute owner of the stock; the other is that at that time he had no right to it whatever. Neither alternative is found, but something quite different, and the result is that the finding is not responsive to the issue presented by the pleadings and the evidence and is not supported by the latter, and the judgment must be reversed for a new trial.

On the trial a question of evidence arose which was the subject of contention throughout and has been discussed at some length before us. · It is certain to arise again on a second trial, and we deem it expedient to determine it now.´ For the purpose presumably of showing the plaintiff's ownership of the stock, there was introduced on his behalf the minutes of the meeting of October 11, 1911, the stock certificate in favor of the plaintiff, and the receipt of the company for seventeen thousand five hundred dollars in payment for the stock. To the defendants' counter-testimony to the effect that the minutes did not show the whole transaction and understanding and that the stock was to be the plaintiff's only upon certain conditions, the plaintiff interposed an objection on the ground

that such testimony was incompetent under the "parol evidence" rule as varying the terms of a written instrument.

The rule forbidding the varying of the terms of a written instrument is based fundamentally upon the hypothesis that the writing or set of writings is one which the parties have agreed upon as being the final and complete expression of their understanding, that, as Professor Wigmore and others put it, there has been an integration. (Wigmore on Evidence, secs, 2401, 2425, 2439.) With respect to the agreement of October 11, 1911, no writings of this character appear in the present case. The first writing is the minutes of the directors' meeting of October 11, 1911, which set forth the purported sale of the shares to the plaintiff but contain no mention of their being any condition attached to the plaintiff's right to them. Plaintiff's counsel contend that testimony showing that something took place at the meeting other than as shown by the minutes is not admissible under the "parol evidence" rule. [4] But minutes of a meeting are not a written instrument. Their function is merely to act as a written record of what took place at the meeting. That record may be true or it may not be, and in the absence of the element of estoppel, as where a party has acted in justifiable reliance upon the minutes, it is permitted to the corporation or to anyone else to show what actually did take place at the meeting. (*Gilson etc. Co.* v. *Gilson,* 51 Cal. 341; *Boggs* v. *Lakeport etc. Assn.,* 111 Cal. 354, [43 Pac. 1106] ; 7 R. C. L., sec. 126.) In the present case there is no element of estoppel, and it was permissible for the defendants to show the full transaction, although but a part of it appeared in the minutes.

[5] It may possibly be worth while to point out that testimony showing that the minutes are not a full or true record of what took place at the meeting is not the same as testimony as to the contents of the minutes. Testimony of the latter sort is not competent, not, however, because it comes within the "parol evidence" rule, but because it is an endeavor to prove the contents of a writing by evidence other than the writing itself; in other words, because the testimony comes within the "best evidence" rule, a rule applicable to proving the contents of any writing, no matter what its character. Of this sort was the testimony held incompetent in *Barrell* v. *Lakeview Land Co.,* 122 Cal. 129, [54 Pac. 594], and *Spangenburg* v. *Nesbitt,* 22 Cal. App. 274, [134 Pac. 343], cited by plaintiff's counsel.

Plaintiff's counsel also cite in support of their position decisions such as *San Pedro Lumber Co.* v. *Reynolds*, 121 Cal. 74, [53 Pac. 410], holding that the books of a corporation, including its minute-book, are competent evidence against it as admissions. Such evidence is, of course, admissible and is entitled to weight, but that is very different from making it conclusive so as to preclude any showing supplementing or countering it.

The second writing is the written proposal of the plaintiff submitted to and accepted by the meeting of October 11, 1911. [6] But when a proposal, even one in writing, is made and accepted, it is permissible to show that it was accepted with conditions or qualifications, or that accompanying the acceptance and in reality forming part of it, terms in addition to those set forth in the proposal were exacted by the acceptor. Because of the fact that the writing is a proposal merely, something more must be shown before it can be considered that there is a contract. That something is an acceptance, and the acceptance is just as much a part of the contract as the proposal, and anything which is a part of the acceptance may be shown, even though the proposal be in writing and the acceptance be not. So far as the "parol evidence" rule goes, the essential distinction between a writing which purports to be a proposal merely and one which purports to be the contract of the parties is that the first does not purport to be the written memorial of both parties as to their understanding and the second does, with the necessary result that in the latter case, but not in the former, the writing and nothing else is to be taken as expressing the contract. It follows that in the present case it was permitted to the defendants to show that their acceptance of the plaintiff's written proposal was conditional upon the plaintiff agreeing, or contained as a part of it that he should agree, that the 175 shares, a certificate for which was to be issued in his name, should be his only conditionally.

The third writing is the receipt of the company for seventeen thousand five hundred dollars in payment for the shares, which specifies that the certificate is to be delivered immediately upon the certificate-book coming from the press. [7] Writings which are receipts, but which also contain contractual terms, have been held to be written contracts, not to be altered or added to, where either they purport to be, or

the evidence shows that they are, the written memorial of the full understanding between the parties. Of this character is usually a bill of lading issued by a carrier acknowledging the receipt of the goods to be transported and specifying the terms of the transportation. But unless the receipt appears to be of this character, the "parol evidence" rule has no application to it. So far as contractual terms are concerned, the receipt in the present case purports only to require the issuance of the certificate for the shares as soon as a certificate-book was had. No presumption can arise from this that the receipt was intended to cover the entire understanding or in particular that there was no understanding as to what should be done with the certificate when issued. In fact, the evidence for the plaintiff himself shows that the receipt did not cover the entire understanding, for, according to that evidence, the understanding included as well the cancellation of the plaintiff's original contract and of the certificate for two hundred shares theretofore made out and deposited with the treasurer of the company. It follows that the evidence introduced by the defendants to show that there were conditions or terms upon which the plaintiff was to have the stock was properly admitted.

The only other point presented to which reference need be made is as to whether the acts of the defendants in declaring the plaintiff's stock forfeited and having it canceled on the books of the company amounted to a conversion, when according to the findings the stock was pledged to the company as security and the plaintiff had not performed the obligations for which it was so pledged. Inasmuch as there was in fact no pledge under any view of the evidence, it is not necessary to determine this point. The question whether the acts of the defendants would amount to a conversion, if the plaintiff were the owner of the stock free of any pledge or hypothecation is not presented or discussed on this appeal and as to it we express no opinion.

Judgment reversed.

Shaw, J., and Lawlor, J., concurred.