[Civ. No. 25895. Second Dist., Div. Two. July 25, 1962.]

HAIDINGER-HAYES, INC., et al., Plaintiffs and Appellants, v. MARVIN HIME AND COMPANY, INC., et al., Defendants and Respondents.

John M. Podlech for Plaintiffs and Appellants.

Bert W. Levit, Herbert Z. Ehrmann and Long & Levit for Defendants and Respondents.

FOX, P. J.—This is an action for breach of bailment alleged to have resulted from a failure on the part of defendant Marvin Hime and Company, Inc., to return to the plaintiffs' assured certain articles of jewelry consigned to defendant.

Plaintiff Haidinger-Hayes, Inc., is a California corporation duly authorized as a surplus line broker. Pursuant to an agreement between this plaintiff and certain underwriters at Lloyd's of London, plaintiff was authorized to write and issue policies of insurance on behalf of these underwriters, to adjust losses and to handle all claims and subrogation matters under such policies. Haidinger-Hayes, acting on behalf of these underwriters, wrote and issued to Akim Riskin policy number LC 55747 effective November 4, 1957, which policy contained a provision insuring Riskin, a jeweler, against loss by robbery of watches, broaches, bracelets and other jewelry consigned by Riskin to others in the sum of $7,500.

Plaintiff Pacific National Fire Insurance Company is a California corporation engaged in the business of writing and issuing policies of insurance. Effective September 15, 1957, this plaintiff wrote and issued to Riskin policy number JB 273100 containing substantially the same provisions as the above mentioned policy. This policy was in the sum of $2,500.

Defendant, Marvin Hime and Company, Inc., is a California corporation engaged in the jewelry business. On April 4, 1957, Riskin consigned to defendant a certain platinum broach and received a "Receipt of Consigned Merchandise" (Exhibit A). On December 30, 1957, a certain wrist watch was similarly consigned by Riskin to defendant and he received a similar receipt (Exhibit B) and on January 24, 1958, a certain bracelet was also consigned upon a like receipt (Exhibit C).

On May 1, 1958, while said articles of jewelry were still in defendant's possession at its place of business, these articles were stolen in an armed robbery. It is admitted by the parties and appears clear in the record that the loss of these articles was neither caused nor contributed to in any manner by the willful act, negligence or fault of defendant. Thereafter, Riskin made a demand on defendant for the return of this jewelry but due to defendant's inability to do so because of the robbery, these articles were never returned to Riskin. Riskin then made a claim for the loss of these articles against the plaintiffs who satisfied this claim as follows: The under-

writers of Lloyd's of London, through their agent, plaintiff Haidinger-Hayes, paid to Riskin the sum of $6,127.99 and plaintiff Pacific paid the sum of $2,042.66 to Riskin. Riskin died before this action was brought to trial.

The plaintiffs brought this action against defendant on the theory that the aforementioned "receipts of consignment" constituted "special contracts" which had the effect of increasing defendant's duty as a bailee. Plaintiffs argued that defendant had an absolute duty to return the consigned items and that its failure to do so subjected it to liability irrespective of the fact that defendant had, at all times, exercised reasonable care in dealing with the jewelry. The trial court entered a judgment for defendant from which plaintiffs appeal.

These alleged contracts are in the form of receipts which, at the top, state "Receipt of Consigned Merchandise." The instruments then described the particular article of jewelry which was therein consigned. At the bottom of these instruments, the documents state: "I agree not to sell or offer for sale, exchange or barter, said above described merchandise unless written permission or bill of sale is given by Akim Riskin, consignor, but take same only for the purpose of inspection; for the purpose of modeling in wax; to determine the fitness in prepared mountings, for the purpose of appraisal and for the purpose of matching with other stones. The value of the merchandise above indicated is to determine the amount of insurance to be carried, or security or deposit to be given by the consignee." All three of the receipts (Exhibits A, B and C) contain the above provision. There is, however, a difference in the remaining printed portions of the receipts. Exhibit A states: "The above described merchandise is to be returned within _____ days from the date hereof, or sooner upon demand at any time. I have read, understood and agree to the foregoing." Exhibits B and C state: "I do unconditionally agree to return the above described merchandise in good condition within _____ days from the date hereof, or sooner upon demand at any time. I have read, understood and agree to the foregoing." All three receipts were signed by an authorized agent of defendant.

Plaintiff's basic contentions on this appeal are: certain findings of fact are unsupported by the evidence and the trial court erred in admitting parol evidence.

■ The general rule when findings are attacked on the ground that the evidence is insufficient to support them is:

"When there is substantial evidence or any inference to be drawn from the evidence to support the findings of the trial court, an appellate court will not make determinations of factual issues contrary to those made by the trier of fact. [Citations.]" (*Smith* v. *Bull*, 50 Cal.2d 294, 306 [325 P.2d 463]; *Ambriz* v. *Petrolane Ltd.*, 49 Cal.2d 470, 477 [319 P.2d 1].) ▆▆ "In reviewing the evidence, all conflicts must be resolved in favor of the questioned findings and all reasonable inferences indulged in their support." (*Butler* v. *Nepple*, 54 Cal.2d 589, 597 [6 Cal.Rptr. 767, 354 P.2d 239].)

We, therefore, must determine whether or not there was substantial evidence to support the attacked findings. However, previous to this, we must determine the duty that a bailee has under ordinary circumstances. ▆▆ This duty was set out cogently in *Travelers Fire Ins. Co.* v. *Brock & Co.*, 30 Cal.App.2d 112 [85 P.2d 905] (p. 114): "Where a bailment is for mutual benefit the bailee in the absence of a *special contract* is held to the exercise of ordinary care in relation to the subject-matter of the bailment and is responsible for loss or injury resulting from his failure to use ordinary care. ▆▆ He is not an insurer of the chattel entrusted to him and is not liable for loss resulting from robbery, burglary, or theft. [Citation.]" (Emphasis added.) Plaintiffs agree with this but assert that the receipts are in the nature of special contracts. We must then determine if the "receipts" constitute special contracts.

The attacked findings are: "10. Said Exhibits 'A', 'B' and 'C' were intended by Riskin and defendant to be receipts only, and neither Riskin nor defendant at any time intended or agreed that the printed provisions of any of said receipts were to be binding on defendant.

"11. The provisions of said receipts are ambiguous, and there was at no time any agreement between Riskin and defendant with respect to any of said articles of jewelry, in said receipts or otherwise, whereby defendant agreed unconditionally to return them to Riskin or to compensate Riskin for the value thereof, whereby defendant assumed liability for their loss without fault on the part of defendant, whereby defendant became an insurer thereof, or whereby defendant agreed to insure them, the only agreement between Riskin and defendant being that defendant would exercise ordinary care with respect to said articles of jewelry. . . .

"13. Thereafter, Riskin made demand on defendant for the return of said articles of jewelry, but owing to defendant's

inability to do so as a result of the aforesaid robbery, defendant failed to return said articles of jewelry to Riskin. Said failure by defendant to return said articles of jewelry to Riskin did not constitute a breach of any contract or agreement between defendant and Riskin, and defendant had sufficient excuse for said failure. . . .

"15. Neither the equities of said Underwriters, acting through their agent Haidinger-Hayes, Inc. nor the equities of plaintiff Pacific National Fire Insurance Company were or are superior to or even equal to the equities of defendant, and said Underwriters and the Pacific National Fire Insurance Company were not and are not subrogated to any right of recovery Riskin may have had against defendant with respect to the loss of said articles of jewelry."

Upon the findings *in toto*, the trial court made the following conclusions of law, *inter alia*:

"1. Defendant was a bailee of the consigned articles of jewelry and owed the bailor a duty to exercise reasonable care only with respect to said articles. There was no special contract or agreement increasing the liability or duty of defendant, and defendant has sufficient legal excuse for its failure to return said articles to the bailor.

"2. Neither plaintiff Pacific National Fire Insurance Company nor said Underwriters at Lloyd's, London, acting through their agent Haidinger-Hayes, Inc. have any right of action by way of subrogation or otherwise against defendant.

"3. Defendant is entitled to judgment that plaintiffs take nothing by their complaint and for its costs of suit."

Plaintiffs' contention that parol evidence cannot be used to support these findings of fact is without merit. Parol evidence was correctly admitted for the purpose of showing that there was, in fact, no contract, viz. the document was merely a receipt. (*Lawrence* v. *Premier Indem. Assur. Co.*, 180 Cal. 688, 698 [182 P. 431]; Code Civ. Proc., §§ 1856-1862.)

In *Halldin* v. *Usher*, 49 Cal.2d 749 [321 P.2d 746], at page 752, the Supreme Court stated: "The rule of law to which the plaintiff refers has to do with the ascertainment of the meaning of the terms of a document where those terms are free from ambiguity. (*Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128, 133-134 [48 P.2d 13].) But the rule is otherwise as to the admission of parol evidence for the purpose of ascertaining whether a document claimed to be a contract was not intended by the parties to have that effect. The rule

is stated with supporting authorities in 20 American Jurisprudence at page 955 as follows: 'The rule that parol evidence is inadmissible to contradict or vary a written contract applies only to a written contract which is in force as a binding obligation. Parol evidence is always competent to show the nonexistence of the contract. . . . Evidence is admissible, at least in equity, to show that a writing which apparently constituted a contract was not intended or understood by either party to be binding as such. The oral testimony in such a case does not vary the terms of the writing, but shows that it was never intended to be a contract or to be of binding force between the parties.' (See also 18 Cal.Jur.2d 756-758.) The rule was applied in *P. A. Smith Co.* v. *Muller*, 201 Cal. 219 [256 P. 411], where it was said at page 222: 'It is well settled by the decisions in many jurisdictions that evidence that parties never intended a writing to constitute a contract . . . is not objectionable under the parol evidence rule. Such evidence does not change a written contract by parol, but serves to establish that such contract had no force, efficacy, or effect.' "

 Where extrinsic evidence has been properly admitted as an aid to interpretation and either the evidence or inferences therefrom are in conflict, any reasonable construction by the lower court will be upheld under the general rule of conflicting evidence. (*Estate of Rule*, 25 Cal.2d 1, 10 [152 P.2d 1003, 155 A.L.R. 1319]; *Quader-Kino A. G.* v. *Nebenzal*, 35 Cal.2d 287, 294 [217 P.2d 650]; 3 Witkin, California Procedure, Appeal, § 89, page 2253.) The trial judge also had for his consideration the prior acts of the parties under identical instruments. "We think the conduct of the parties under such former identical contract, and when their relations were harmonious, was competent evidence of the intention of the parties under the subsequent contracts, and there is much force in the suggestion of plaintiffs that the court should give much weight to that practical construction placed upon the subsequent contracts by the parties themselves." (*Rosenberg* v. *Geo. A. Moore & Co.*, 194 Cal. 392, 403 [229 P. 34].)

 Parol evidence is also admissible to show the terms of a receipt and even to vary the express terms of that receipt. "[A] receipt is not a written instrument the terms of which cannot be contradicted by parol, unless it also contains a binding agreement. A mere receipt is not intended to be an exclusive memorial, but is in the nature of an

admission that money or property has been received. As such it is explainable by parol testimony, as other admissions usually are." (18 Cal.Jur.2d, Evidence, § 261, pp. 746-747.)

Though the receipts by their terms required the Hime Company to get written permission and a bill of sale from Riskin before offering consigned items for sale or selling them, no permission of any kind was ever obtained, bills of sale were obtained only in rare cases, and Riskin never objected to this procedure. Though the receipts by their terms contemplated return of the consigned merchandise within a certain number of days even without demand of Riskin, the blank wherein the number of days was to be inserted was in fact never filled in. No such date appears on any of the documents in question. The defendant either sold the consigned merchandise, purchased it for its own stock, or returned it to Riskin when it desired or when Riskin asked that it be returned. The article covered by Exhibit "A" to the complaint was consigned on April 4, 1957, and was in the possession of the Hime Company for more than a year before the robbery. Plaintiffs emphasize that two of the three subject receipts imposed an obligation on the Hime Company to "unconditionally" return the merchandise, yet the evidence showed that Riskin used the receipt form containing the word "unconditionally" interchangeably with the form which did not contain this word, and the trial court could certainly have found that which of these forms was used by Riskin depended on the purely accidental circumstances of which of two pads of receipts Riskin happened to have at hand.

The parol evidence of dealings between the Hime Company and Riskin with respect to consigned merchandise where receipts such as Exhibits "A," "B" and "C" to the complaint were used showed that the intent and purpose of the consignment was to permit the Hime Company to sell the merchandise with complete freedom, with the only obligation of the Hime Company to pay Riskin the amount stated in the receipt in the event of a sale. This was directly contrary to the printed terms of the receipts to the effect that the article taken by the Hime Company was only for the purpose of "inspection," "modeling in wax," "to determine the fitness in prepared mountings," "appraisal" or "matching with other stones." Such evidence was thus admissible under the above cited authorities to show that Exhibits "A," "B" and "C" to the complaint were intended to be receipts only and not special contracts and constituted substantial evidence which was suffi-

cient to support the findings of the trial court to this effect. The fact that Riskin was dead and thus unable to rebut Hime's testimony was unfortunate but could not, as plaintiffs seem to argue, affect the admissibility of said testimony.

The basic difficulty with plaintiffs' argument is that they would have this court reweigh the evidence, and draw inferences contrary to those drawn by the trial court. Under firmly established principles we are not at liberty to do this. (*People* v. *Gould,* 111 Cal.App.2d 1, 8 [243 P.2d 809].)

Therefore, the only duty that defendant had as a bailee was to exercise "ordinary care in relation to the subject-matter of the bailment" and was responsible only "for loss or injury resulting from his failure to use ordinary care." (*Travelers Fire Ins. Co.* v. *Brock & Co., supra,* 30 Cal.App.2d 112, 114.) A bailee is not an insurer. (*J. M. Brown, Inc.* v. *W. P. Fuller & Co.,* 28 Cal.App. 676 [153 P. 960].) It was admitted by the parties at the trial (and there is no contention contra now) that the loss was not occasioned by the failure of defendant to exercise due care. Therefore, the trial court was correct in concluding that the bailment, according to the law above cited and facts found, was not breached.

Because there was no breach of any bailment, the issue of subrogation (and the equities involved therein) becomes moot and need not here be discussed.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.