[Civ. No. 26140.   Second Dist., Div. Two.   Feb. 4, 1963.]

LORAS L. EASON, Plaintiff and Respondent, v. AETNA LIFE INSURANCE COMPANY et al., Defendants and Appellants.

Newlin, Tackabury & Johnston, George W. Tackabury and Hudson B. Cox for Defendants and Appellants.

J. Robert Arkush for Plaintiff and Respondent.

FOX, P. J.—Plaintiff brought this action to recover $7,000 allegedly due to her as the beneficiary under a contributory group life insurance policy issued by defendant Aetna Life Insurance Company, hereinafter referred to as Aetna, through defendant Southwestern Engineering Co., hereinafter referred to as Sweco. Defendants appeal from a judgment in favor of plaintiff.

Carl Eason, the husband of plaintiff, Loras L. Eason, was employed by defendant Sweco throughout the year of 1958 until the time of his death on April 19, 1958. In December of 1957, Sweco negotiated with Aetna for the issuance of a group life insurance policy for the benefit of its employees. On December 18 Carl Eason applied for coverage thereunder to the extent of his allowable $7,000 of death benefits, to be effective from January 1, 1958, and for this purpose he signed and filed with his employer an application for both life insurance coverage and dependents' hospitalization coverage. The insurance was on a contributory basis and the application authorized the deduction from the employee's pay in each pay period of his contribution toward the total premium. In the case of Carl Eason, these deductions amounted to $2.45 per semimonthly pay period for contributory life insurance, and $2.47 per semimonthly pay period for dependents' hospital and medical insurance, or a total of $4.92.

The application signed by Carl Eason was the only document in connection with the said life insurance that Carl Eason ever saw or signed. The said application contained the following sentence: "I further understand that if my services with Southwestern Engineering Company are not terminated I may withdraw from the Plan at the end of any calendar quarter by giving prior written notice."

The group life insurance policy issued by Aetna to Sweco was not actually delivered until June 18, 1958, or almost two months after Carl Eason's death. However, by the terms of said policy, it was effective as of January 1, 1958. The individual certificates given the employees were not actually delivered during Carl Eason's lifetime and, therefore, he never received one.

Sweco deducted from Carl Eason's check all the required payments covering the premiums for the contributory insurance through March 31, 1958.

On April 1, 1958, Sweco changed its payroll procedure from a semimonthly pay period to a biweekly period. The first check under this new pay arrangement was issued on April 11, 1958, and covered the period from April 1st to April 6th. This check was the last check ever received by Carl Eason as the next pay check was not issued until April 25, 1958, after Eason's death. This latter check was paid directly to plaintiff.

No deduction was made for any of the group insurance premiums from any check issued on April 11, 1958—Sweco absorbed the total cost of contributory insurance for the period covering April 1st through April 6, 1958, for all its employees, including the decedent.

The decisive issue in the case rests upon a determination of whether there had been an effective termination of the life insurance segment of the group plan by decedent prior to his death.

The following testimony of Mrs. Blewett, an employee of Sweco, re a telephone conversation between her and decedent is the basis for defendants' contention that there had been an effective oral termination:

"Q. What did Carl say to you and what did you say to Carl? A. He asked me that—he told me that he would like to drop his voluntary insurance, which is contributory, and asked if I would see that it be taken care of. Q. What did you say to that? A. At that time I knew that it couldn't be handled during— . . . Q. Just a second, please. You can't

tell us what you knew. Tell us what you said. A. I explained to him. Q. Is that what you said to him? A. Yes. Q. Put it, if you can, in as near the language as what you said to him on the telephone. A. As closely as I recall, I told him that it was too late to have the deductions stopped for the period, that particular period. It was the latter part of the month and it was too close to the pay period and I thought it probably would be about April the 1st before the deductions could be discontinued. Q. This is what you told him? A. That is what I told him. He said it was 'all right.' Q. Is that the full conversation you had with him? A. That is about it as closely as I can remember.''

The trial court found: ''That the purported telephone conversation between Employee and one Violet Blewett, an employee of Employer, was not a cancellation or termination of said Employee's contributory group life insurance plan under the aforementioned Insurance Company policy; that said Violet Blewett was not shown to have authority to cancel or terminate said insurance for any employee under said group life insurance policy and no such notice of any attempted cancellation or termination by Employee was ever given Insurance Company prior to said Employee's death.''

When an attack is made on the findings on the ground that there is not sufficient evidence to support them, the following rule must be kept in mind. ■ ''When there is substantial evidence or any inference to be drawn from the evidence to support the findings of the trial court, an appellate court will not make determinations of factual issues contrary to those made by the trier of fact.'' (*Smith* v. *Bull,* 50 Cal. 2d 294, 306 [325 P.2d 463]; *Ambriz* v. *Petrolane Ltd.,* 49 Cal.2d 470, 477 [319 P.2d 1].) ■ ''In reviewing the evidence, all conflicts must be resolved in favor of the questioned findings and all reasonable inferences indulged in their support.'' (*Butler* v. *Nepple,* 54 Cal.2d 589, 597 [6 Cal.Rptr. 767, 354 P.2d 239]; *Haidinger-Hayes, Inc.* v. *Marvin Hime & Co.,* 206 Cal.App.2d 46, 50 [23 Cal.Rptr. 455].)

Plainly the telephone conversation between decedent and Mrs. Blewett was lacking in definitiveness. But this conversation was not the sole evidence touching the questioned finding. The trial.court could reasonably infer from the date of the telephone conversation (near the end of the quarter) that the decedent had read the application and therefore knew that he was privileged to ''withdraw from the plan at the end of any calendar quarter by giving prior written notice.'' But

he did not give any written notice. The fact Sweco paid decedent's insurance for six days after the end of the calendar quarter is not without significance as to its interpretation of the conversation. On the basis of this factual picture it cannot be said as a matter of law that the quoted finding is without sufficient evidentiary support.

Also, cancellation is an affirmative defense and one who relies thereon has the burden of proving it. (*Aetna Ins. Co.* v. *Kennedy,* 301 U.S. 389, 395 [57 S.Ct. 809, 81 L.Ed. 1177]). The trial court obviously felt that the defendant had not met this burden. Thus the foundation was laid for the court's conclusion that "no effective oral cancellation or termination of said policy was ever made by said employee [decedent] . . . "

The basic difficulty with defendants' argument is that they would have this court reweigh the evidence, and draw inferences contrary to those drawn by the trial court. Under firmly established principles we are not at liberty to do this. (*People* v. *Gould,* 111 Cal.App.2d 1, 8 [243 P.2d 809] ; *Haidinger-Hayes, Inc.* v. *Marvin Hime & Co., supra,* 206 Cal.App.2d 46, 54.)

There is another ground for upholding the judgment as to Aetna, viz., that in a group insurance plan the employer is not the agent of the insurance company. The principle is thus stated in *Boseman* v. *Connecticut General Life Ins. Co.,* 301 U.S. 196 [57 S. Ct. 686, 81 L. Ed. 1036, 110 A.L.R. 732] at p. 204: "Employers regard group insurance not only as protection at low cost for their employees but also as advantageous to themselves in that it makes for loyalty, lessens turnover and the like. When procuring the policy, obtaining applications of employees, taking payroll deduction orders, reporting changes in the insured group, paying premiums and generally in doing whatever may serve to obtain and keep the insurance in force, employers act not as agents of the insurer but for their employees or for themselves." This was quoted with approval in *Blos* v. *Bankers Life Co.,* 133 Cal. App.2d 147, 150-151 [283 P.2d 744].

It follows from this rule that any communication to Sweco by decedent has no more legal significance than an instruction by a principal to his own agent. "[A] mere instruction [by a principal] to its agent to cancel, does not operate as a cancellation." (45 C.J.S., Insurance, § 450.)

Mrs. Blewett, the employee with whom the decedent discussed the alleged termination, testified that she did not at

any time prior to Eason's death notify Aetna of any termination request. The following testimony is here apposite: ''Q. Now, Mrs. Blewett, you never advised, prior to Mr.Eason's death, the insurance company, Aetna Insurance Company, of any request made by Mr. Eason, did you? . . . The witness: No, I did not. Q. By Mr. Arkush: Now after this conversation, you had no further conversations of any nature involving insurance with Mr. Eason prior to his death, did you? A. No, I didn't.''

No other witness testified to ever notifying Aetna of any purported cancellation or termination by the decedent; there is no showing that at any time prior to Eason's demise that Aetna had any knowledge whatsoever of any attempted cancellation. It is axiomatic that an uncommunicated request for cancellation does not have the legal effect of relieving Aetna of its obligations under the insurance contract.

It appears, however, that the trial court was in error in rendering a judgment against the employer—Sweco. Since there was no effective cancellation or termination of the policy the insurance was in full force and effect at the time of Eason's death and the plaintiff was, therefore, entitled to recover under its terms. This being the case, Sweco cannot be held liable on the theory that it negligently failed to keep the decedent insured. There does not appear to be any other possible theory upon which Sweco could be held liable. Even if the defendants acted in concert in attempting to deprive Eason of his insurance coverage, any such attempt was unsuccessful and plaintiff suffered no damage therefrom. ''[T]he conclusion that the policy was not terminated is inconsistent with such liability.'' (*Naify* v. *Pacific Indemnity Co.*, 11 Cal.2d 5, 13 [76 P.2d 663, 115 A.L.R. 476].)

The judgment is affirmed as to Aetna, plaintiff to recover her costs on appeal against Aetna; the judgment is reversed as to Southwestern Engineering Company which shall recover its costs on appeal against plaintiff.

Ashburn, J., and Herndon, J., concurred.