Filed 3/5/15  Dzharadzhyan v. Exclusive Motorcars CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| AZNIV DZHARADZHYAN,<br><br>　　　　　　　Plaintiff and Appellant,<br><br>　v.<br><br>EXCLUSIVE MOTORCARS, INC. et al.,<br><br>　　　　　Defendants and Respondents. | B252832<br><br>(Los Angeles County<br>　Super. Ct. No. BC488773) |

　　　　　APPEAL from the judgment of the Superior Court of Los Angeles County.  Joseph Kalin, Judge.  Affirmed.

　　　　　Chris Campbell for Plaintiff and Appellant.

　　　　　Turner Aubert & Friedman and Matthew C. Wolf for Defendants and Respondents.

\* \* \* \* \* \* \* \* \* \*

In this bailment case, plaintiff Azniv Dzharadzhyan sued defendants Karen Martirosyan, , and Exclusive Motorcars, Inc., doing business as Rick's Auto Body & Paint, alleging causes of action for breach of contract, negligence, and gross negligence. Plaintiff's husband, Ovsep Sukunyan, left plaintiff's 1957 Chevrolet Bel Air at defendants' auto shop for minor repairs. While it was there, defendants' shop was burglarized one night, and plaintiff's car was stolen. Plaintiff seeks to recover $150,000 (the alleged value of the car) from defendants.

Defendants moved for summary judgment on the ground they had satisfied their duty of ordinary care, because at the time of the burglary, plaintiff's car was secured behind a gated and locked perimeter fence, within a locked garage that was protected by an ADT security system. The trial court agreed, and granted defendants' motion. On appeal, plaintiff urges that triable issues of material fact exist as to whether defendants satisfied their duty of care, reasoning that defendants could have done more to secure the car, by engaging the car's "kill switches" that would have made it "impossible" to start the vehicle, and by storing the car key in a separate locked box. We affirm.

## FACTS

The evidence in support of defendants' motion for summary judgment established the following undisputed facts: Defendants' shop is secured by a perimeter fence with a locked gate. Arman Martirosyan, an owner and employee of the business with over 10 years of experience at the business, and experience with other auto repair shops, averred that "[d]uring the entire time that it has been in business, [defendants' shop] has followed the industry custom and practice of securing vehicles overnight by use of a locked perimeter gate." Within the perimeter are other structures which can be locked separately, including a garage-like paint booth, which has a rollup door that is kept locked before and after business hours with a heavy-duty padlock. The garage is also secured by an ADT alarm system.

On March 10, 2012, plaintiff's husband brought the 1957 Chevrolet Bel Air to defendants' shop for cosmetic repairs. Mr. Sukunyan signed an estimate authorizing the

2

repairs. The estimate did not include any special instructions concerning the car's storage.

When defendants' shop was closed for business, the car was stored in the locked garage within the locked perimeter. As was their custom, at the close of business on March 19, 2012, defendants locked the car in the garage, placed the car key on a hook inside the garage, armed the ADT security system, and locked the shop's perimeter gate. That night, thieves ripped down the perimeter gate, broke the lock to the garage within, and stole plaintiff's car. The ADT alarm was triggered, but the car was gone by the time police arrived.

In opposition to defendants' motion, plaintiff's husband averred that "[a]s a security measure, I installed two 'kill switches' on The Car. . . . [¶] . . . [¶] . . . Each time I brought The Car to [defendants' shop], I told [defendants] that there were two kill switches . . . and I admonished [defendants] to engage the kill switches before closing each day." According to Mr. Sukunyan, after the car was stolen, defendants told him the keys were left inside the car, and defendants were unsure if the kill switches had been engaged on the night of the theft.

Among her opposition papers, plaintiff filed a declaration of Viken Tchalikian, a purported automotive industry expert, averring (without elaboration) that he has "10 years of experience in the automobile industry" as "a business owner, vehicle part sales representative, vehicle customizing agent, and as a mechanic." Mr. Tchalikian is "familiar with the use of immobilizers, or 'kill switches' as a means of theft prevention of cars. [¶] . . . When engaged, a kill switch makes it impossible to start a car's engine, and therefore makes it impossible to drive the car. [¶] . . . Engaging a kill switch is not time consuming, nor is it difficult." He also declared that he is "familiar with how keys are used to start cars." Mr. Tchalikian opined that experienced thieves may be able to start a car without keys, but that doing so "is a very involved, time-consuming process . . ." and that it is "exceedingly more difficult to steal and drive a car if the potential thief does not have access to the keys." Mr. Tchalikian also opined that "[i]t is standard practice in any mechanic's shop to place the keys to any vehicle on the property in a secured lock box

3

after business hours, before closing. It is never proper procedure to leave any key inside the vehicle."

However, plaintiff's opposing separate statement of disputed and undisputed facts made no mention of the Tchalikian declaration; it did not cite any evidence purporting to establish defendants' failure to meet their standard of ordinary care. Instead, it simply "disputed" some of defendants' evidence without factual support.[1] The separate statement did cite Mr. Sukunyan's declaration to dispute defendants' evidence that Mr. Sukunyan did not provide any special instructions regarding the storage of the car. But it did not cite the portion of Mr. Sukunyan's declaration where he averred he had installed "kill switches" in the car.

Plaintiff also filed copies of portions of the deposition testimony of Mr. Martirosyan, in support of the assertion in her separate statement of disputed and undisputed facts that defendants' "customary business practice is to put the keys to cars in a secured 'lock box' after business hours, before closing." In the cited deposition testimony, Mr. Martirosyan said the keys to other cars stored on the lot on the night of the burglary were in a locked box in the office. The citations to Mr. Martirosyan's deposition did not, however, support plaintiff's contention in her separate statement that he had testified the shop's custom or practice was to lock *all* car keys in a locked box.

Defendants lodged objections to both the Sukunyan and Tchalikian declarations. Defendants objected that the testimony about "kill switches" lacked foundation, and was improper opinion. Defendants also lodged foundation and improper opinion objections to the portions of the Tchalikian declaration discussing the standard practices of mechanic's shops, and to his opinions relating to the difficulty of stealing a car without a key.

The trial court did not issue evidentiary rulings on the form of proposed order submitted by defendants, but it did rule on the objections in its order granting summary

---

[1]     For example, in response to defendants' separate statement of undisputed facts describing the storage of plaintiff's car, plaintiff responded, "Plaintiff has no information or belief about this matter and on that basis states: Disputed."

judgment, stating that "Plaintiff's contentions regarding the purported additional security measures are not supported by admissible, non-speculative evidence demonstrating the existence, operation, or efficacy of such measures. The Court finds that Plaintiff failed to raise or introduce any dispute of material fact in her separate statement as required by statute. As such, the court finds that there is no evidence presented for Defendants' evidentiary objections."

The trial court concluded that defendants presented undisputed evidence that they exercised ordinary care in keeping plaintiff's car in a locked garage, secured by an alarm, within a locked perimeter. The court concluded that the additional security measures suggested by plaintiff did not create a material dispute because defendants had exercised ordinary care. Plaintiff timely appealed.

## DISCUSSION

### 1. Standard of Review

A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2).) The defendant can satisfy this burden by presenting evidence that negates an element of the cause of action or shows that the plaintiff does not possess and cannot reasonably expect to obtain evidence needed to support an element of the claim. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 (*Miller*).) If the defendant meets this burden, the burden shifts to the plaintiff to set forth "specific facts" showing that a triable issue of material fact exists. (§ 437c, subd. (p)(2).) In opposing the motion, the plaintiff must "include a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating whether the opposing party agrees or disagrees that those facts are undisputed. The statement also shall set forth plainly and concisely any other material facts that the opposing party contends are disputed." (§ 437c, subd. (b)(3).) "Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion." (*Ibid.*)

We review the trial court's ruling de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opposing party. (*Miller*, *supra*, 36 Cal.4th at p. 460.) We review the trial court's ruling on evidentiary objections under the abuse of discretion standard of review. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)

## 2. The Merits

"A bailment is generally defined as 'the delivery of a thing to another for some special object or purpose . . . .' [Citations.]" (*Windeler v. Scheers Jewelers* (1970) 8 Cal.App.3d 844, 850.) Absent an agreement to the contrary, a bailee is held to the standard of ordinary care in relation to the goods and is liable only for a loss or injury resulting from the bailee's failure of ordinary care. (*Haidinger-Hayes, Inc. v. Marvin Hime & Co.* (1962) 206 Cal.App.2d 46, 50; see also Civ. Code, § 1852.) The bailee is not an insurer of the goods. (*Homan v. Burkhart* (1930) 108 Cal.App. 363, 366.) " 'When the goods are lost, destroyed or damaged by accident, without any fault on the part of the bailee, the loss must fall on the bailor.' " (*Gebert v. Yank* (1985) 172 Cal.App.3d 544, 551.)

The parties appear to agree that all of plaintiff's causes of action rest on whether defendants satisfied their duty of ordinary care.[2] Plaintiff contends, however, that defendants failed to exercise the degree of ordinary care required for her unique and valuable car, in that defendants did not engage the car's kill switches or lock the key in a separate locked box.

"Ordinary care" is relative, and the standard by which it is measured varies with the circumstances of each particular case. (See *Phoenix Assurance Co. v. Texas Holding Co.* (1927) 81 Cal.App. 61, 73-74.) Customary practice may constitute evidence of ordinary care. (See *Varas v. Barco Mfg. Co.* (1962) 205 Cal.App.2d 246, 258.) While

---

[2] In any event, plaintiff failed to provide any argument concerning her claims for breach of contract and gross negligence; therefore, any claim of error as to the disposition of those claims has been waived. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

breach of the duty of ordinary care is usually a factual issue for the jury, "[o]n the facts of a particular case, a trial or appellate court may hold that no reasonable jury could find the defendant failed to act with reasonable prudence under the circumstances. Such a holding is simply to say that as a matter of law the defendant *did not breach* his or her duty of care, i.e., was not negligent toward the plaintiff under the circumstances shown by the evidence." (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 773.)

It was undisputed that defendants secured plaintiff's car behind a locked perimeter, inside a separately locked garage which was protected by an ADT security system. Moreover, one of defendants' principals averred that the industry custom was to secure cars within a locked perimeter fence.[3] This evidence was "undisputed" in plaintiff's responsive separate statement. On this record, these undisputed facts are sufficient to prove as a matter of law that defendants exercised ordinary care to protect the car from theft. Plaintiff's proof that defendants did not engage the "kill switches" or store the key in a separate lockbox did not demonstrate a material dispute about whether defendants satisfied their duty of ordinary care.

First, plaintiff's separate statement failed to make any mention of the Tchalikian declaration, which was the only evidence plaintiff offered on the standard of care. It also failed to cite the portions of the Sukunyan declaration averring that kill switches were installed on the car. This, alone, is a sufficient basis to grant defendants' motion. (See Code Civ. Proc., § 437c, subd. (b)(3); *Thatcher v. Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081, 1086.)

Second, plaintiff did not present any admissible evidence in support of the claim that defendants' safety measures fell below the standard of care. The Tchalikian declaration does not include facts sufficient to lay a foundation for his expertise to opine on the standard of care among auto repair shops to secure cars stored overnight. (*Saporta*

---

**3** At oral argument, plaintiff's counsel argued that facts concerning the standard of care were not included in defendants' separate statement, and therefore should not be considered by the court. However, defendants' separate statement clearly stated that "[t]he premises [are] secured by a locked perimeter gate" and cited to the relevant portions of the Martirosyan declaration.

7

*v. Barbagelata* (1963) 220 Cal.App.2d 463, 468-469.) Mr. Sukunyan's declaration is similarly deficient. The fact that he installed "kill switches" and reminded defendants to engage them does not create a material dispute as to whether the other security measures defendants took fulfilled their duty of ordinary care.

Last, the deposition testimony of defendants' agent, offered to support plaintiff's theory that defendants departed from their custom of securing all car keys in a locked box, did not support this conclusion at all. Mr. Martirosyan did not testify that it was defendants' custom and practice to store all car keys in a locked box. Mr. Martirosyan testified that the keys to the other cars were stored in a locked box; but plaintiff's *car and key* were stored in a locked garage, with a dedicated ADT security alarm. No other car was stored inside the locked garage. The other cars were stored inside the locked perimeter without the additional security of the separate garage in which plaintiff's car was stored, with its own lock, and its own ADT alarm system.

## DISPOSITION

The judgment is affirmed. Respondents are to recover their costs on appeal.


GRIMES, J.

We concur:

RUBIN, Acting P. J.


FLIER, J.


8